1   Elissa Gershon, State Bar No. 169741
    Elissa.Gershon@disabilityrightsca.org
2   Anne Hadreas, State Bar No. 253377
    Anne.hadreas@disabilityrightsca.org
3   DISABILITY RIGHTS CALIFORNIA
    1330 Broadway, Suite 500
4   Oakland, CA  94612
    Telephone:  (510) 267-1200
5   Fax:  (510) 267-1201

6
    Betsy Havens, State Bar No. 296842
7   Betsy.Havens@disabilityrightsca.org
    Marilyn Holle, State Bar No. 61530
8   Marilyn.Holle@disabilityrightsca.org
    DISABILITY RIGHTS CALIFORNIA
9   350 South Bixel Street, Suite 290
    Los Angeles, California 90017
10  Telephone: (213) 213-8000
    Fax: (213) 213-8001
11

12  [Additional Counsel on following page]

13  Attorneys for Plaintiffs JERRY THOMAS,
    SEAN BENISON, JUAN PALOMARES
14

15              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
16

17  JERRY THOMAS, et al.          )   Case Number: 14-CV-08013-FMO(AGRx)
                                  )
18          Plaintiff(s),         )   **PLAINTIFFS' OPPOSITION TO
                                  )   DEFENDANTS' MOTION TO DISMISS**
19      vs.                       )
                                  )
20                                )   Date:        April 14, 2016
    JENNIFER KENT, et al.         )   Time:        10:00 a.m.
21                                )   Courtroom:   22, 5th Floor
                                  )
22          Defendant(s).         )   Judge:       Hon. Fernando M. Olguin
                                  )   Trial Date:  7/12/2016
23                                )   Action Filed:10/16/2014
24

25

26

27

                                  i

Robert D. Newman, State Bar No. 86534
rnewman@wclp.org
Mona Tawatao, State Bar No. 128779
mtawatao@wclp.org
Sue Himmelrich, State Bar No. 110664
shimmelrich@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010-2826
Telephone: (213) 487-7211
Facsimile: (213) 487-0242

ii

1

**Table of Contents**

2

I.      INTRODUCTION ....................................................................................1

II.     STATEMENT OF THE CASE ...............................................................2

     A.      DHCS has failed to authorize medically necessary services
        requested by Plaintiffs and recommended by their doctors. ................3

          1.      Jerry Thomas .................................................................3

          2.      Sean Benison ................................................................5

          3.      Juan Palomares .............................................................6

     B.      DHCS has not unequivocally assured Plaintiffs that they will
        receive the services authorized by DHCS ...........................................8

     C.      DHCS has ignored Plaintiffs' Claims for Declaratory and
        Injunctive Relief .................................................................................11

III.    ARGUMENT ........................................................................................11

     A.      DHCS bears the heavy burden of proving mootness and any
        factual disputes should be resolved in Plaintiffs' favor. ...................11

     B.      DHCS' incomplete and temporary approval of Plaintiffs'
        services above the Waiver cost limits cannot moot this lawsuit. .......13

          1.      DHCS has not implemented any policy change, let alone
                one evidenced by language that is "broad in scope and
                unequivocal in tone." ..................................................16

          2.      DHCS has not implemented a policy change that fully
                "addresses all of the objectionable measures" employed
                by the government in this case. ...................................16

          3.      DHCS refuses to implement changes to its Waiver
                program and its policies and procedures, so this case
                cannot be a catalyst for adoption of a new policy without
                this court's intervention. ............................................17

iii

4.    DHCS cannot claim that any new policy is in place, let alone for a sufficient duration to moot this case. .....................18

5.    The Agency's officials continue to engage in conduct and positions identical or similar to that challenged by Plaintiffs......................................................................................18

C.    Plaintiffs' claims also fall within the "capable of repetition yet evading review exception" to the mootness doctrine. .........................20

D.    To the extent that DHCS' letters are treated as settlement offers, Plaintiffs' refusal to accept these settlement offers means that their claims are not moot....................................................................21

E.    Even assuming *arguendo* that Plaintiffs' claims for injunctive relief are moot, their claims for declaratory relief are not moot.........23

IV.    **CONCLUSION**....................................................................................**25**

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

4    *A.D. ex rel. L.D. v. State of Hawaii Dept. of Ed.* (9th Cir. 2013)
      727 F.3d 911 ...................................................................................... 23

5
6    *Alaska Ctr. for the Env't v. U.S. Forest Serv.* (9th Cir. 1999)
      189 F.3d 851 ...................................................................................... 23

7    *Arizonans for Official English v. Arizona* (1997)
8      520 U.S. 43 .......................................................................................... 12

9    *Autery v. United States*  (9th Cir. 2005)
      424 F.3d 944 .......................................................................................... 1
10

11   *Bell v. City of Boise* (9th Cir. 2013)
      709 F.3d 890 ....................................................................... 15, 17, 27
12

13   *Bertrand ex rel. Bertrand v. Maram* (7th Cir. 2007)
      495 F.3d 452 ...................................................................................... 21
14

15   *California Trout, Inc., v. United States Bureau of Reclamation* (C.D. Cal.
         2015)
16      115 F. Supp. 3d 1102 ...................................................................... 13

17   *Campbell-Ewald Co. v. Gomez* (2016)
18      136 S. Ct. 663 ............................................................... 2, 16, 23, 24

19   *Ctr. for Food Safety v. Veneman* (D. Haw. 2005)
      364 F. Supp. 2d 1202 ...................................................................... 26
20

21   *Diaz v. First American Home Buyers Protection Corp.* (9th Cir. 2013)
      732 F.3d 948 ............................................................................... 24, 25
22

23   *Dreier v. United States* (9th Cir.1996)
      106 F.3d 844 ...................................................................................... 13
24

25   *EduMoz, LLC v. Republic of Mozambique* (C.D. Cal. 2013)
      968 F. Supp. 2d 1041 ............................................................. 12, 13, 14

26

27

*Federal Election Commission v. Wisconsin Right to Life, Inc.* (2007)
     551 U.S. 449 ................................................................................22

*Forest Guardians v. Johanns* (9th Cir. 2006)
     450 F.3d 455 ................................................................................25

*Gates v. Towery* (7th Cir. 2005)
     430 F.3d 429, 2005 WL 3159563 ........................................18, 24

*Greenpeace Action v. Franklin* (9th Cir.1993)
     14 F.3d 1324 ................................................................................23

*Headwaters, Inc. v. Bureau of Land Management, Medford District* (9th
     Cir. 1989)
     893 F.2d 1012 .............................................................................26

*Hrivnak v. NCO Portfolio Mgmt., Inc. (*6th Cir. 2013)
     719 F.3d 564 ................................................................................24

*In re Cellular 101, Inc.* (9th Cir. 2008)
     539 F.3d 1150 .............................................................................12

*Knox v. Serv. Employees Int'l Union, Local 1000* (2012)
     132 S. Ct. 2277 ...........................................................................21

*McQuillion v. Schwarzenegger* (9th Cir. 2004)
     369 F.3d 1091 .............................................................................27

*NAACP v. Ameriquest Mortgage Co.* (C.D. Cal. 2008)
     653 F. Supp. 2d 1013 .................................................................27

*Neighbors of Cuddy Mountain v. Alexander* (9th Cir. 2002)
     303 F.3d 1059 .............................................................................26

*Nw. Envtl. Def. Ctr. v. Gordon* (9th Cir. 1988)
     849 F.2d 1241 .............................................................................26

*Olmstead v. L.C. ex rel. Zimring* (1999)
     527 U.S. 581 .........................................................................22, 28

*Rosebrock v. Mathis* (9th Cir. 2014)
     745 F.3d 963 .......................................................................passim

*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency* (9th Cir. 2009)
    581 F.3d 1169 ...................................................................................14, 15, 20

*Safe Air for Everyone v. Meyer* (9th Cir. 2004)
    373 F.3d 1035 ......................................................................................................14

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty* (9th Cir.
    2003)
    343 F.3d 1036 ......................................................................................................14

*White v. Lee* (9th Cir.2000)
    227 F.3d 1214 ...........................................................................................15, 17, 19

I.    **INTRODUCTION**

Defendants' last minute motion to dismiss this lawsuit as moot is a smorgasbord of incomplete and inapposite legal citations with a dollop of factual distortion. Throughout the course of this litigation up until the present day, Defendants Department Of Health Care Services and its Director, Jennifer Kent, (hereinafter "DHCS") have never provided or even offered Plaintiffs **all** the relief Plaintiffs seek in their Second Amended Complaint. Instead, DHCS defines what it is willing to provide Plaintiffs and then concludes that this should moot the lawsuit. The law in this Circuit and in the Supreme Court requires otherwise.

Apart from this significant failure of proof, DHCS fails to discuss the legal standard it must meet in a motion to dismiss for lack of subject matter jurisdiction. DHCS bears the "heavy burden" of proving mootness. *Parents Involved in Cnty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Moreover, when the jurisdictional issue is inextricably intertwined with facts going to the merits of the case, evidence must be viewed "in the light most favorable to the non-moving party." *Autery v. United States*, 424 F.3d 944, 956, (9th Cir. 2005).  DHCS has not come close to meeting this burden.

DHCS' motion is based upon letters it sent the three Plaintiffs in October and December of 2015 in which it finally concedes that Plaintiffs should receive medically necessary services above the existing cost limits for the Nursing Facility/Acute Hospital Transition and Diversion Waiver ("NF/AH Waiver" or "Waiver") program.  Where, as here, a government body contends that a case is moot based upon voluntary cessation of challenged conduct, the Ninth Circuit in *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014), has identified five factors to consider.  DHCS has not met any of these requirements.  The letters to Plaintiffs offering to pay for services beyond the individual cost limits are inadequate, conditional, and temporary at best.  As Plaintiffs do not accept these

1

1    letters as resolving this lawsuit, DHCS also ignores the recent Supreme Court

2    pronouncement that "an unaccepted settlement offer. . .does not moot a plaintiff's

3    case."  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016).

4        In short, the Court should deny DHCS' motion to dismiss.

5    **II.    STATEMENT OF THE CASE**

6        Plaintiffs are Medi-Cal recipients with significant physical disabilities who

7    were institutionalized but now live in their own homes with Medi-Cal-funded

8    nursing and attendant care provided by the NF/AH Waiver.  P8.[1]  They all require

9    Waiver and other Medi-Cal services 24 hours per day to remain safely at home.

10   P141-145, P197-P198, P244, P248, P251.

11       The NF/AH Waiver, administered by DHCS, is intended to offer an

12   alternative to institutional care for people like Plaintiffs who otherwise qualify for

13   placement in Medi-Cal funded nursing facilities and hospitals.  P24, P26.

14   Through the Waiver, individuals can receive services such as in-home nursing and

15   attendant care that they need to remain safely at home.  D11-D12.  DHCS has,

16   however, chosen to set individual cost limits for services provided through the

17   Waiver which are significantly lower than comparable institutional care.  D14-

18   D18; P53-P62.  Thus, Waiver participants are denied funding for in-home Waiver

19   services that they would otherwise be spent on them if they were institutionalized.

20       DHCS admits that the per-participant cost of Waiver and other Medi-Cal

21   services cannot exceed the individual cost limits set by DHCS.  Defendants'

22   Motion to Dismiss ("Mot. to Dismiss") 4:21-5:2, 5:12-15.  Beginning in October

23   2015, DHCS has nonetheless authorized services for Plaintiffs over these cost

24   limits.  Indeed, DHCS admits that without at least this level of services, Plaintiffs

25   are at high risk of institutionalization and other harm.  P186; P230; P299.

26   _____

27   [1] Unless otherwise indicated, citations to evidence are to the parties' Statement of
     Uncontroverted Facts re Motion for Summary Judgment (ECF No. 102), to the
     parties' Evidentiary Appendix filed therewith (ECF No. 103), and/or directly to
     evidence filed in support or in opposition to the Motion for Summary Judgment.

While DHCS repeatedly asserts that it has, and will continue to, authorize "all medically necessary" services for Plaintiffs (*see, e.g.,* Mot. to Dismiss 2:18-21, 12:20-22, 15:10-12, 17:21-23), the undisputed facts belie these assertions. First, DHCS has not in fact authorized all medically necessary services requested by Plaintiffs and recommended by their physicians. Second, DHCS has not, and will not, unequivocally assure Plaintiffs that the services it has authorized will continue without regard to the Waiver's individual cost limits. On the contrary, it has stated that it would be "impossible" for it to do so. Declaration of Rebecca Schupp ("Schupp Dec.") ECF No. 99-1 ¶ 28.

## A.    DHCS has failed to authorize medically necessary services requested by Plaintiffs and recommended by their doctors.

DHCS admits that the Plaintiffs' physician-signed Plans of Care (or "Plans of Treatment") identify "among other things, a patient's medically necessary services." Mot. to Dismiss at 7, fn. 4. Yet DHCS has not authorized for any of the Plaintiffs the services their doctors have identified in their Plans of Treatment as medically necessary.

### 1.    Jerry Thomas

Plaintiff Jerry Thomas is diagnosed with Post-Polio Syndrome and Supranuclear Palsy. P116-P119. He has quadriplegia, he breathes through a tracheostomy with assistance from a mechanical ventilator for portions of the day, and he cannot communicate verbally. Declaration of Beverly Thomas ("Thomas Dec.") ¶ 2; P116-P127. He lived in nursing and Subacute institutions for 13 years before returning home to live with his wife. Thomas Dec. ¶ 3; P148. Mr. Thomas is dependent on others for all of his care needs and requires constant skilled care to avoid medical emergencies. P141-P145.

Since at least July 2014, this Plaintiff has requested, and his doctors have recommended, round-the-clock nursing. Thomas Dec. ¶¶ 5-6; P144, P165, P166.

3

1   DHCS did not, however, authorize the medically necessary 24-hour nursing

2   recommended by his physician.  Thomas Dec. ¶¶ 6-7; P161-P163.  It instead

3   reduced his nursing care by 20 hours per month to comply with the cost limit for

4   his level of care.  *Id.*  While DHCS now takes credit for the fact that Mr. Thomas'

5   nursing services were not actually reduced (Mot. to Dismiss 12:22-13:7), the only

6   reason was that Plaintiff  timely appealed and was granted continuing benefits

7   pending his administrative hearing decision ("aid-paid-pending") pursuant to state

8   regulations.  DSS Manual of Policies and Procedures § 22-072.5 ECF No. 103-

9   134, Evidentiary Appendix re Motion for Summary Judgment ("Evid. App.")

10  Attachment ("Att.") 129.  Had DHCS' actions gone unchallenged, Mr. Thomas'

11  services would have been cut.

12      It was not until October 2015 that DHCS adopted a different position.  ECF

13  No. 103-087, Evid. App. Att. 83, Pls.' Ex. 47 (Thomas letter 10/7/15).  Even then,

14  its October 7 letter to Mr. Thomas only affirmed the services he had been

15  receiving pursuant to the aid-paid-pending order; it did not authorize any

16  additional services, including the 24-hour nursing ordered by his physician.  Evid.

17  App. Att. 26, Pls.' Ex. 45 at JT002388-2395 (Plan of Care).  On October 14, 2015,

18  Mr. Thomas submitted a new plan of care to DHCS signed by his treating

19  physician Dr. Kayaleh, requesting:

20      RN case management visit 2 hours/ month x 2 months auth by NF/AH

21  Waiver.  Skilled nursing care 24 hours day x 7 days a week x / 30-31 days month

22  as ordered by MD. [Primary caregiver, In-Home Supportive Services ("IHSS"),

23  Waiver Personal Care Services ("WPCS")] to provide care as back up when

24  skilled nursing not available.

25      Evid. App. Att. 27, Pls.' Ex. 48 (Plan of Treatment).  DHCS has never

26  responded to this request.  Thomas Dec. ¶ 11.

27

1    Because Mr. Thomas is not authorized for 24-hours per day of nursing care,

2    he is not authorized for "all medically necessary" services, contrary to DHCS'

3    assertion.  Mot. to Dismiss 12:20-22, 13:15-18, 15:3-6.

4           2.     Sean Benison

5        Plaintiff Sean Benison indisputably needs 24-hour care because he relies on

6    a mechanical ventilator to breathe and needs caretakers to attend to all of his basic

7    personal needs.  Evid. App. Att. 16 at 8, Pls.' Ex. 70 (Dhamija rebuttal report);

8    Declaration of Sean Benison ("Benison Dec.") ¶¶ 4-5.  He has advanced

9    hereditary progressive Becker Muscular Dystrophy and chronic respiratory

10   failure. P190-P191.  Since his discharge from a Subacute nursing facility in 2013,

11   Mr. Benison has been forced to supplement the services he receives through the

12   NF/AH Waiver and through county-administered IHSS by paying out-of-pocket

13   and relying on the charity of family because DHCS has never, and still has not,

14   authorized the round-the-clock direct care that he requires.  Benison Dec. ¶ 22.

15       As with Mr. Thomas, DHCS did not change its position towards Mr.

16   Benison until October 2015.  ECF No. 103-073 Evid. App. Att. 69, Pls.' Ex. 20.

17   DHCS' October 7 letter to Mr. Benison simply affirmed the services he had

18   previously been receiving—416 hours per month of nursing care, 283 hours per

19   month of IHSS authorized by Ventura County, and two hours per month of nurse

20   case management.  *Id.*  On October 26, 2015, Mr. Benison's primary care

21   physician, Dr. Campwala, signed a Supplemental Physician's order for an increase

22   in nursing hours from 416 to 480 per month, which would have provided him with

23   the 24 hour direct care he needs.  Evid. App. Att. 37, Defs.' Ex. 28. DHCS'

24   December 2, 2015 letter acknowledged receipt of this Supplemental Order and on

25   February 26, 2016 DHCS authorized only 21 of the additional 64 hours per month

26   of nursing requested.  *See* ECF No. 103-102 Evid. App. Att. 98, Defs.' Ex. 145

27

5

*Thomas, et al.* v. *Kent, et al.*; Case No. 14-CV-08013 FMO (AGRx): Plaintiffs' Opposition to Defendants' Motion to Dismiss

1  (Dec. 2, 2015 letter); ECF No. 103-109 Evid. App. Att. 104 at 382-386, Ex. 5

2  (Feb. 26, 2016 letter).

3        Although DHCS' recent authorization provides Mr. Benison with 720 hours

4  per month of services, he is still not receiving the round-the-clock direct care that

5  he needs to remain safe at home.  Benison Dec. ¶ 19-21.  This is because

6  approximately 46.5 hours of his IHSS monthly hours pay for an IHSS worker to

7  do domestic and related services for him.  *Id.* at ¶ 19.  Specifically, these services

8  include preparation of meals, meal clean up, laundry, shopping for food, other

9  shopping and errands.  These hours are specifically listed in his Menu of Health

10  Services from DHCS.  *Id.* at ¶¶ 19-20.

11        For example, Mr. Benison is assessed to need 45 minutes of laundry, 45

12  minutes for shopping for food, and 23 minutes of other shopping, weekly.  ECF

13  No. 103-128 Evid. App. Att. 128 at 3, SB000478.  During this time, his caregiver

14  leaves the apartment to do things like wash clothes and buy food.  Benison Dec.

15  ¶20.  He can only do that when one of Mr. Benison's nurses or other caregivers

16  are there because Mr. Benison cannot be left alone.  Benison Dec. ¶¶ 5, 20. At any

17  time, his ventilator could become disconnected and he could die from lack of

18  oxygen in a number of minutes.  He is unable to prevent that from happening. *Id.*

19        Because Mr. Benison is lacking 46.5 hours per month of authorized direct

20  care, he too is not authorized for "all medically necessary" services by DHCS

21  contrary to DHCS' assertion.  Mot. to Dismiss 15:10-12; 16:1-3; 17:14-17.

22              3.    Juan Palomares

23        Like the other two Plaintiffs, Juan Palomares has an undisputed need for

24  24-hour care.  Evid. App. Att. 16 at 8, Pls.' Ex. 70 (Dhamija rebuttal report);

25  P244, P248, P251.  Mr. Palomares has quadriplegia from a car accident in 2005,

26  with complications from autonomic dysreflexia, which can lead to life threatening

27

6

1    health emergencies if not immediately addressed.  Declaration of Juan Palomares

2    ("Palomares Dec.") ¶¶ 2-5.

3          Nevertheless, from 2007 to October 2015, he was never authorized for

4    round-the-clock care, and was subjected to a series of cuts in his authorized hours

5    due to the Waiver's individual cost limit.  P258-P286; Palomares Dec. ¶¶ 8-9.  On

6    or about September 23, 2015, Mr. Palomares submitted a Plan of Treatment

7    signed by his treating physician Dr. Leberthon requesting:  "RN case

8    management: 8 units [2 hours]/ month x 3 months; 24 hour/ 7 days per week

9    **direct care** through Waiver Personal Care Services and IHSS as authorized by the

10   County."  Evid. App. Att. 22, Pls.' Ex. 33 (Plan of Treatment 9/23/15) (emphasis

11   added).

12         On October 7, 2015, DHCS authorized:  283 hours per month of IHSS, 473

13   hours per month of WPCS, and two hours per month of nurse case management.

14   ECF No. 103-074, Evid. App. Att. 70, Pls.' Ex. 21 (Palomares letter 10/7/15).

15   Because his current authorization for 720 hours per month of IHSS and WPCS

16   includes approximately 47 hours per month of non-direct care (i.e., shopping,

17   laundry, housecleaning, etc.), Mr. Palomares remains without 47 hours per month

18   of direct care.  Evid. App. Att. 20, Pls.' Ex. 31 (Menu of Health Services) at JP-

19   000352.

20         Like Mr. Benison, Mr. Palomares also needs someone with him at all times,

21   even when his IHSS worker goes to the grocery store or on other errands.

22   Palomares Dec. ¶¶ 4-5, 12-13. Because he is not authorized for direct care during

23   the time that his worker is completing other tasks, Mr. Palomares is forced to be

24   alone approximately one hour every day Monday through Friday between his

25   IHSS worker shifts, which places his health at risk due to the dangers of, and need

26   for immediate response to, his autonomic dysreflexia condition, or if his catheter

27   gets clogged.  Palomares Dec. ¶ 13.

1    Lacking 47 hours per month of direct care, Mr. Palomares is not authorized
2    for "all medically necessary services," contrary to DHCS' assertions.  Mot. to
3    Dismiss 17:21-23, 18:4-7.  Moreover, DHCS' December 2 letter to Mr. Palomares
4    purports to be reviewing his Plan of Treatment, suggesting that the services
5    authorized on October 7 could be reduced or terminated.  ECF No. 103-090, Evid.
6    App. Att. 86, Pls.' Ex. 57 (Palomares letter 12/2/15); Palomares Dec. ¶ 15.

7    **B.    DHCS has not unequivocally assured Plaintiffs that they**
         **will receive the services authorized by DHCS**
8

9    Citing the October 7 and December 2, 2015 letters and the Waiver renewal
10   process, DHCS now makes much of its authorization to provide services to
11   Plaintiffs without regard to the cost limits under the Waiver.  *See, e.g.,* Mot.to
12   Dismiss 21:15-22:13.  Once again, however, the facts underlying DHCS'
13   assertions reveal its lack of commitment.

14   Federal law requires that DHCS provide assurances that, in the aggregate,
15   providing Medi-Cal services to Waiver participants at home would not cost more
16   than serving them in institutional settings.  Mot. to Dismiss 3:28-4:4; *see also*
17   Parties' Joint Memorandum of Points and Authorities re Summary Judgment
18   ("Mem. Sum. Judg.") 5:20-6:2; P29, P31-P34, P51.  DHCS has a number of ways
19   it can demonstrate federal cost neutrality, including setting no individual cost cap,
20   setting cost limits at or above the rate for comparable institutional care, and
21   allowing for exceptions to the individual cost limit.  Mem. Sum. Judg. 6:4-7; P64-
22   P65, P67.

23   Rather than select any of these options, the Waiver terms for which DHCS
24   sought and received federal approval, and by which DHCS now must abide, set
25   individual cost limits far below institutional rates, and do not include the option to
26   offer exceptions to the individual cost limit, even to protect Waiver participants'
27   health and safety.  P20, P29, P31, P53, P55-60, P67.  DHCS admits that under the

8

1  terms of the Waiver, "the total cost of chosen services for each participant cannot

2  exceed the annual program cost limit for [a Waiver participant's] level of care."

3  Motion to Dismiss 5:12-15; *see also Id*. 4:21-24, 4:25-5:2; Schupp Dec. ¶ 7.

4          Nevertheless, and without explaining how they are permitted to do so,

5  DHCS purports to "waive" these rules as to Plaintiffs, claiming that it will pay for

6  Waiver services over the current individual cost limits consistent with medical

7  necessity "and applicable law." Evid. App. Att. 69, Pls.' Ex. 20 (Benison letter

8  10/7/15); Evid. App. Att. 70, Pls.' Ex. 21 (Palomares letter 10/7/15); Evid. App.

9  Att. 83, Pls.' Ex. 47 (Thomas letter 10/7/15); Evid. App. Att. 86, Pls.' Ex. 57

10  (Palomares letter 12/2/15); Evid. App. Att. 87, Pls.' Ex. 58 (Thomas letter

11  12/2/15); Evid. App. Att. 98, Defs.' Ex. 145 (Benison letter 12/2/15).  The

12  December 2 letters further advise that if Plaintiffs are not granted the services they

13  request, they will be issued a Notice of Action and may appeal through the

14  administrative hearing process.  Evid. App. Att. 86 (Palomares letter 12/2/15);

15  Evid. App. Att. 87 (Thomas letter 12/2/15); Evid. App. Att. 98 (Benison letter

16  12/2/15).  DHCS also references the Waiver renewal process and advises

17  Plaintiffs that "[i]f the stakeholder and renewal process results in program changes

18  that affect [Plaintiffs], [they] will be notified."  *Id.*

19          Each of these provisions of the December 2 letters undercuts DHCS'

20  "commitment" to Plaintiffs that they will not be subject to the Waiver cost caps

21  presently or in the future.  First, as discussed above, none of the Plaintiffs has

22  been authorized for medically necessary services consistent with their physician-

23  signed Plans of Treatment.

24          Second, DHCS' reference to authorizing services "consistent with

25  applicable law" suggests that DHCS may at any time decide to cut Plaintiffs'

26  services in accordance to the applicable Waiver terms imposing the current

27  individual cost limits without exceptions.  Further, if Plaintiffs were to challenge

9

1  DHCS' denial of services recommended by their physicians in an administrative

2  hearing as DHCS advises, the applicable law that the administrative tribunal

3  would be required to follow would be the Waiver itself.  As demonstrated by the

4  legal position taken by DHCS in the administrative hearing of Kimberly Alvarez,

5  DHCS would likely argue that the Waiver does not permit exceptions.  ECF No.

6  103-108, Exhibit B to Oleson Dec., DHCS Response to Claimant's Position

7  Statement; *see also*, Evid. App. Att. 16, Pls.' Ex. 30 (DHCS Hearing Decision re

8  Palomares, 9/26/13) at DHCS 2647, 2656; Evid. App. Att. 47 (DHCS Hearing

9  Decision re Thomas, 1/30/15) at JT-00322-23.  DHCS' ambiguous, equivocal

10  December 2 letters to Plaintiffs do not carry weight in contrast.

11      Finally, DHCS' own unwillingness to offer assurances to Plaintiffs that the

12  services it has authorized over the cost limits will survive the Waiver renewal

13  process is telling.  In DHCS' own words: "Because of th[e] uncertainty [of the

14  stakeholder input process and review by CMS], it is **impossible** for the

15  Department to make long-term, indefinite commitments to individual participants,

16  including Plaintiffs, regarding the exact services they will receive, and under what

17  program they will receive such services."  Schupp Dec. ¶ 28 (emphasis added).

18  The Waiver renewal process is underway and thus far, DHCS has refused to make

19  any representations as to the outcome.  Declaration of Ellen Rollins ("Rollins

20  Dec.") ¶¶ 9-13.  During the past ten years, DHCS has received public comment

21  encouraging changes to the cost limits in the Waiver, all of which have been

22  ignored by this state agency.  P306-P313; Declaration of Elissa Gershon

23  ("Gershon Dec.") Exhibit A at 1837, 1835, and Exhibit B at 3353-3355.

24      Although DHCS uses the stakeholder process as a shield to avoid making

25  representations about its intentions in the new Waiver, it admits that 1) the proper

26  process is to "move forward a concept through the Administration" and then

27  present it to stakeholders (P314); and 2) any changes to the Waiver that have a

*Thomas, et al. v. Kent, et al.*; Case No. 14-CV-08013 FMO (AGRx): PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

fiscal impact must go through the Legislature and the budgetary process.  Rollins
Dec. Ex. B.  At this late stage, DHCS has even failed to state any intention to
discontinue the current individual cost caps with the new Waiver.  Without these
changes, Plaintiffs are likely to be subject to the same rules and limitations as they
were before they filed the instant action.

## C.    DHCS has ignored Plaintiffs' Claims for Declaratory and Injunctive Relief

Plaintiffs filed this lawsuit on October 16, 2014. Plaintiffs were later granted
leave on July 6, 2015, to file their Second Amended Complaint which, *inter alia*,
clarified that the relief sought exceeds simply increasing Plaintiffs' authorized
Waiver services. ECF No. 69 (Order granting Motion for Leave to Amend).
Rather, Plaintiffs expressly requested leave to amend their Complaint to add
"language clarifying that Defendants' policies and actions with regard to their
administration of the NF/AH Waiver violate not only Plaintiffs' rights, but those of
'qualified individuals with disabilities such as Plaintiffs,'" and to make
corresponding requests to the Requests for Relief.  ECF No. 52 5:9-21 (Motion for
Leave to Amend Complaint). On July 21, 2015, DHCS answered the Second
Amended Complaint and denied any violations of federal or state law.  ECF No. 71
¶¶ 129-134, 141-145, 151-153. Notably, DHCS admitted that the Court has subject
matter jurisdiction over this lawsuit.  *Id.* at ¶¶ 14, 15. Meanwhile, Defendants
continue to deny any violation of law (P324-327) and refuse to modify their cost
cap policies and procedures.

## III.    ARGUMENT

### A.    DHCS bears the heavy burden of proving mootness and any factual disputes should be resolved in Plaintiffs' favor.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)
and 12(h)(3) for want of subject matter jurisdiction may be brought at any time.

11

1    But "[i]t is the duty of counsel to bring to the federal tribunal's attention, *"without*

2    *delay,"* facts that may raise a question of mootness." *Arizonans for Official*

3    *English v. Arizona*, 520 U.S. 43, 68, 117 S. Ct. 1055, 1069 fn. 23 (1997) (italics in

4    original).  Here, DHCS' motion is based on letters sent to Plaintiffs in early

5    October 2015 and a conference of counsel concerning the pending motion in

6    October 2015 as well. Mot. to Dismiss 1:10-12; 2:18-21.  In the five months since

7    then Defendants have taken 13 depositions, retained an expert to defend this case,

8    and propounded additional written discovery – hardly the actions of a party that

9    considered the case moot.  Gershon Dec. ¶¶ 3-7.[2]

10        DHCS does not fully describe the standards for considering a motion to

11    dismiss when the motion relies on facts outside the pleadings.  At the outset,

12    DHCS bears the "heavy burden" of proving mootness.  *Parents Involved in Cnty.*

13    *Sch.,* 551 U.S. at 719.  Although DHCS cites *EduMoz, LLC v. Republic of*

14    *Mozambique*, 968 F. Supp. 2d 1041 (C.D. Cal. 2013) for the proposition that a

15    plaintiff "bears the burden of establishing that the court has subject matter

16    jurisdiction" (Mot. to Dismiss 9:3-7), DHCS omits the following critical principle

17    from this same opinion:

18        Defendants have proffered declarations and documents in support of

19        their Rule 12(b)(1) motion; they thus mount a factual attack on subject

20        matter jurisdiction. The Ninth Circuit has held that the district court

21        should apply a standard similar to that used in deciding summary

22        judgment motions when asked to decide a factual attack under Rule

23        12(b)(1). Evidence outside the pleadings may be considered, but all

24        factual disputes must be resolved in favor of the non-moving party.

25

26

27    _____

[2]. There is some authority that Defendants' delay should bar the current motion. *In re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (party's failure to raise settlement agreement earlier waived its right to assert mootness as defense).

*Thomas, et al. v. Kent, et al.*; Case No. 14-CV-08013 FMO (AGRx): PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

*Id*. at 1060, *citing Dreier v. United States*, 106 F.3d 844, 847 (9th Cir.1996).

This Court recently reaffirmed that same principle in *California Trout, Inc., v. United States Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1109 (C.D. Cal. 2015): "In the absence of an evidentiary hearing, disputed facts relevant to subject matter jurisdiction are viewed in the light most favorable to the non-moving party."

Therefore, if factual disputes remain after considering Plaintiffs' evidence in opposition to the instant motion, the Court should resolve any such disputes in Plaintiffs' favor and deny DHCS' motion to dismiss.

### B.    DHCS' incomplete and temporary approval of Plaintiffs' services above the Waiver cost limits cannot moot this lawsuit.

DHCS does not challenge Plaintiffs' standing at the commencement of this lawsuit or even as of the time DHCS answered the Second Amended Complaint. Instead DHCS contends that Plaintiffs' claims became moot as of October 2015.[3]

While DHCS quotes *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) for the principle that a court loses subject matter jurisdiction when it cannot "grant effective relief," DHCS omits the critical following sentences from this Ninth Circuit decision:

Courts have long recognized, however, a "voluntary cessation"

exception to mootness. Under this doctrine, the mere cessation of

_____

[3] Mootness was not an issue in *Edumoz, LLC*. 68 F. Supp. 2d 1041. DHCS' other citations also are inapposite. In *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004), The Ninth Circuit *reversed* the District Court's dismissal under 12(b)(1) because, as here, plaintiff's substantive claims for violation of the Resource Conservation and Recovery Act and the issue of subject matter jurisdiction were intertwined and the claims were not "wholly insubstantial and frivolous," so dismissal for lack of subject matter jurisdiction was error. Similarly, in *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1051 (9th Cir. 2003), the Ninth Circuit *affirmed* the District Court's *denial* of a motion dismiss for lack of subject matter jurisdiction based on sovereign immunity. Neither of those cases presented issues of mootness.

13

1    illegal activity in response to pending litigation does not moot a case,

2    unless the party alleging mootness can show that the "allegedly

3    wrongful behavior could not reasonably be expected to recur."

4    Without such an exception, "the courts would be compelled to leave

5    [t]he defendant ... free to return to his old ways."

6    *Id.* (citations omitted).  In *Rosemere*, a nonprofit organization filed suit against the

7    Environmental Protection Agency to compel action by the government agency on

8    a complaint that the plaintiffs had filed.  *Id.* at 1171-72.  Although the EPA did act

9    on the complaint, it only did so after the plaintiffs had moved for declaratory and

10    injunctive relief.  *Id.* at 1172.  The court held that that the plaintiffs' claims were

11    not moot, and that the burden is on the governmental defendant to "demonstrate

12    why repetition of the wrongful conduct is highly unlikely." *Id.* at 1174.

13    DHCS also has invoked the precept that the government is presumed to act

14    in good faith.  Mot. to Dismiss 21:9-14.  But even when the government changes

15    its policy in good faith, the government still must bear the heavy burden of

16    showing that the challenged conduct cannot reasonably be expected to start up

17    again.  *White v. Lee,* 227 F.3d 1214, 1243–44 (9th Cir.2000*); see also Bell v. City*

18    *of Boise*, 709 F.3d 890, 898-99 (9th Cir. 2013) (government agency bears the

19    "heavy burden" of showing that it will not resume its conduct). A plaintiff's

20    claims are not moot when the agency defends the legality of its conduct and does

21    not say it plans a permanent change in its policy.  *See, e.g., Parents Involved in*

22    *Cnty. Sch.*, 551 U.S. at 719 (school district did not sustain "heavy burden" when it

23    "vigorously defend[ed] the constitutionality of its race-based program, and

24    nowhere suggest[ed] that if this litigation is resolved in its favor it will not resume

25    using race to assign students"). As the Supreme Court recently reaffirmed, a case

26    becomes moot "only when it is impossible for a court to grant any effectual relief

27    whatever to the prevailing party. . . . As long as the parties have a concrete

14

*Thomas, et al. v. Kent, et al.*; Case No. 14-CV-08013 FMO (AGRx): PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   interest, however small, in the outcome of the litigation, the case is not moot."

2   *Campbell-Ewald Co.*, 136 S. Ct. at 669. (citations and internal quotations

3   omitted.)

4       Until the present day, DHCS has vigorously defended the legality of the

5   cost limits for the Waiver program.  DHCS has done nothing to moot Plaintiffs'

6   claims for either injunctive or declaratory relief. Because DHCS has not provided

7   Plaintiffs with all of the services they and their doctors have requested, has

8   informed Plaintiffs that the renewal of the Waiver may alter their services, and has

9   refused to amend the Waiver cost limits, DHCS cannot meet the "voluntary

10  cessation" exception or other legal tests for mootness in this Circuit.

11      The Ninth Circuit recently enumerated five factors to be weighed where, as

12  here, a case is supposedly rendered moot by "voluntary cessation" of challenged

13  conduct "not reflected in statutory changes or even in changes in ordinances or

14  regulations":

15      [W]e have indicated that mootness is more likely if (1) the policy

16      change is evidenced by language that is "broad in scope and

17      unequivocal in tone"; (2) the policy change fully "addresses all of the

18      objectionable measures that [the Government] officials took against

19      the plaintiffs in th[e] case"; (3) "th[e] case [in question] was the

20      catalyst for the agency's adoption of the new policy"; (4) the policy

21      has been in place for a long time when we consider mootness,; and (5)

22      "since [the policy's] implementation the agency's officials have not

23      engaged in conduct similar to that challenged by the plaintiff[ ]."

24  *Rosebrock*, 745 F.3d 972 (*citing White* 227 F.3d at 1243–44), *cert. denied sub*

25  *nom; Rosebrock v. Hoffman*, 135 S. Ct. 1893 (2015).

26      DHCS does not satisfy any of these five factors.

27

15

1     1. DHCS has not implemented any policy change, let alone one evidenced by language that is "broad in scope and unequivocal in tone."

3    DHCS has not made any policy change, let alone one that is "broad in scope

4 and unequivocal in tone" and therefore does not meet the first *Rosebrock* prong.

5 *Rosebrock*, 745 F.3d at 972. Rather, DHCS has sent letters unilaterally authorizing

6 some of the relief sought to the three individual Plaintiffs in this lawsuit and *no*

7 *one else*. P321-P322. DHCS admits that none of the letters were sent "pursuant to

8 any change in statute, regulation or DHCS policy."  P318.  It is also undisputed

9 that DHCS will not promise to continue its authorizations above the cost limits for

10 any certain period of time. P319-P320; D34.

11    To meet this prong of the "voluntary cessation exception, a defendant –

12 even a government defendant – must "make it 'absolutely clear that the allegedly

13 wrongful behavior'—the alleged unconstitutional enforcement of the

14 Ordinances—'could not reasonably be expected to recur.'" *Bell*, 709 F.3d at 901.

15 Here, in contrast, it is undisputed that DHCS cannot and will not state

16 unequivocally that the three Plaintiffs will no longer be subject to the individual

17 cost limits for Waiver services.  P319-P320; D34.

18     2. DHCS has not implemented a policy change that fully "addresses all of the objectionable measures" employed by the government in this case.

20    DHCS also fails the second prong of the *Rosebrock* test.  DHCS' partial and

21 incomplete steps to improve Plaintiffs' services are insufficient to make this case

22 moot. *Rosebrock*, 745 F.3d at 972. In *Bell,*  the Ninth Circuit gave weight to the

23 fact that the challenged policy "fail[ed] to fully address Plaintiffs' allegations in

24 their amended complaint with regard to Defendants' nighttime enforcement of the

25 Ordinances." 709 F.3d at 900. In this case, DHCS utterly ignores Plaintiffs' claims

26 for injunctive and declaratory relief.  In the Second Amended Complaint,

27 Plaintiffs pray, among other things, for a permanent injunction that would prevent

16

1  Defendants from continuing to administer the NF/AH Waiver in a manner that

2  places qualified individuals such as Plaintiffs at risk of institutionalization.  ECF

3  No. 70 at 37-39.  DHCS also ignores Plaintiffs' Plans of Treatment and actual

4  requests for services as detailed in the accompanying declarations, choosing

5  instead to offer only what DHCS believes Plaintiffs are due.  "To eliminate the

6  controversy and make a suit moot, the defendant – even a government defendant

7  — must satisfy the Plaintiffs' *demands;* only then does no dispute remain between

8  the parties." *Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005) (italics in

9  original). Where, as here, DHCS' offers leave gaping holes when compared to

10 Plaintiffs' demands, DHCS has failed to address all of its "objectionable

11 measures" as required by *Rosebrock* and is not entitled to assert that Plaintiffs'

12 claims are moot.

13          3.     DHCS refuses to implement changes to its Waiver program and
                   its policies and procedures, so this case cannot be a catalyst for
14                 adoption of a new policy without this court's intervention.

15          DHCS likewise fails the third prong of the *Rosebrock* analysis — that the

16 case in question was the catalyst for the agency's adoption of a new policy.

17 *Rosebrock*, 745 F.3d at 972.  In that case, HUD implemented a policy

18 memorandum that "addresse[d] all of the objectionable measures that HUD

19 officials took against the Plaintiffs in this case, and even confesse[d] that this case

20 was the catalyst for the agency's adoption of the new policy. *Id.* at 976, *quoting*

21 *White*, 227 F.3d 1214, 1243 & n. 25.  In this case, DHCS has refused to modify

22 the terms of the Waiver or its implementing policies and procedures, steadfastly

23 maintaining its position that it has done no wrong.  P324-P327.  *See also supra*,

24 discussion about waiver renewal process at Section II.B.  DHCS has conceded that

25 there are no written policies or criteria for authorizing services over the Waiver's

26 individual cost limits, and that it collects no data on who requests services above

27 the cost limit, nor on who is provided those medically necessary services.  P92-

P95, P102-P103.  Only with this Court's intervention will DHCS offer the relief sought and needed by Plaintiffs and others in identical positions to avoid harm, including discrimination and institutionalization.

4.    DHCS cannot claim that any new policy is in place, let alone for a sufficient duration to moot this case.

Even if DHCS had made a policy change, which it has not, any such policy change has not been in place long enough to satisfy its heavy burden of showing that its illegal conduct is not likely to recur.  The length of time the enunciated policies were in place in *Rosebrock* (three years) and *White*  (16 months) prior to the court's ruling was a notable factor in the finding that the claims were moot. *See Rosebrock*, 745 F.3d at 974; *see also White*, 227 F. 3d at 1243.  In contrast, DHCS sent letters only to the three Plaintiffs several months ago, and DHCS admits that these letters are not "unequivocal."  Far from trying to show that it plans to continue its authorizations of additional services, DHCS instead states that "it is impossible . . . to make long-term, indefinite commitments to individual participants, including Plaintiffs."  D34; Schupp Dec. ¶ 28.  Moreover, DHCS refuses to give any indication of what, if any changes to its Waiver program, or its implementing policies, practices and procedures it intends to make.  *See Rollins Dec.* ¶¶ 9-13.

5.    The Agency's officials continue to engage in conduct and positions identical or similar to that challenged by Plaintiffs.

The fifth and final *Rosebrock* factor requires that defendants "have not engaged in conduct similar to that challenged by the plaintiff."  *Rosebrock,* 745 F.3d at 971.  Here, in contrast, Plaintiffs' counsel are aware of several cases in which DHCS has drastically cut services to Waiver participants due to the cost limits.  One such participant, Kimberly Alvarez, was highlighted in Plaintiffs' recent Motion for Summary Judgment.  *See Mem. Sum. Judg.* 25:3-16.  Despite evidence that Ms. Alvarez requires around the clock care, she is facing a 90

18

percent cut in her Waiver nursing services because, upon reassessment by DHCS, her level of care and corresponding cost limit were reduced.  Oleson Dec. ¶¶ 1-3, 5-7, 9, 12-14.  This cut will leave her without care for more than twelve hours per day and may force her family to place her in an institution.  *Id.* at ¶¶ 12, 17-19, 21. On administrative appeal, DHCS has taken the position that it cannot make an exception to Waiver requirements to provide Ms. Alvarez with services over her cost limit, and that any request for an exception or reasonable accommodation must be brought in federal court.  *Id.* at ¶ 20; P323; Oleson Dec. Ex. B 8:24-9:17, 12:1-10.  *See also* ECF NO. 103-103, Evid. App. Att. 99; Toth Dec. ¶¶ 18-20, 23-25.

This conduct, taken together with DHCS' repeated protestations that it has done no wrong, negates any claim of mootness.  As the Ninth Circuit stated in *Rosemere*, "[w]e are also intent on ensuring that 'the government cannot escape the pitfalls of litigation by simply giving in to a plaintiff's individual claim without renouncing the challenged policy, at least where there is a reasonable chance of the dispute arising again between the government and the same plaintiff.'" *Rosemere*, 581 F.3d at 1175 (citation omitted). This is particularly true where a defendant insists that its conduct is lawful and justified even as it attempts to moot the litigation. *See Knox v. Serv. Employees Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012) ("since the union continues to defend the legality of the Political Fight–Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future").

Cited by DHCS, *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452 (7th Cir. 2007) is inapposite.  The focus in *Bertrand* was the necessity for early certification of the class "to prevent defendants from buying off all potential class representatives by meeting their demands, one at a time, and thus preventing effectual relief to a larger class of victims." *Id.* at 456.  The appellate court never

1  discussed the mootness doctrine and its exceptions, but rather used the fact that one

2  of the plaintiffs received what he sought in the complaint – admission to a waiver

3  program - as a frame for its criticism that "[t]he district court mishandled the issues

4  related to class certification." *Id.* at 455.

5      Ironically, the present case presents the very scenario that the "voluntary

6  cessation" exception to the mootness doctrine is meant to avoid. DHCS has given

7  temporary relief to these three Plaintiffs – and only these three Plaintiffs – simply

8  to try to moot this lawsuit. There has been no change in policy, no promise that

9  this temporary relief will continue, and no systemic change to avoid

10  reinstitutionalization of Plaintiffs and others in this Waiver program. DHCS has

11  not met its heavy burden of proving the mootness of Plaintiffs' claims.

12      **C.  Plaintiffs' claims also fall within the "capable of repetition**
       **yet evading review exception" to the mootness doctrine.**
13

14      DHCS further argues that this case does not fit within the "capable of

15  repetition yet evading review" exception to the mootness doctrine. Mot. to

16  Dismiss 22:14-23:18. Under this exception, a case is not moot if 1) the actionable

17  conduct is too short in duration to be litigated to completion prior to its expiration;

18  and 2) Plaintiffs can reasonably expect to suffer the same actionable conduct

19  again. *Federal Election Commission v. Wisconsin Right to Life, Inc.,* 551 U.S.

20  449, 462 (2007). In the very case that is the foundation of DHCS' Waiver

21  program, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594 (1999), the two

22  plaintiffs were "currently receiving treatment in community-based programs."

23  Nevertheless, the Supreme Court held that "the case is not moot. As the District

24  Court and Court of Appeals explained, in view of the multiple institutional

25  placements [plaintiffs] have experienced, the controversy they brought to court is

26  'capable of repetition, yet evading review.'" *Id.*

27

20

In the present case, DHCS admits that Plaintiffs will be subject to continuing review and evaluation in their requests for services under the Waiver. P175, P223, P295; D34; s*ee also* Schupp Dec. ¶ 28 ("…it is impossible for the Department to make long-term, indefinite commitments to individual participants, including Plaintiffs…").  Since Plaintiffs' service requests will unquestionably be subject to continuous review (*see* December 2, 2015 letters to Plaintiffs), the "capable of repetition" prong of this test is satisfied.

DHCS additionally admits that Plaintiffs must submit a new plan of treatment every 180 days (D37) and that Plaintiffs may be subject to new rules and standards after December 2016.  D34.  As a practical matter, then, the wrongful behavior alleged in this lawsuit may evade review. *See, e.g., Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329 (9th Cir.1993) (one year); *Alaska Ctr. for the Env't v. U.S. Forest Serv.,* 189 F.3d 851, 855 (9th Cir.1999*)* (two years); *A.D. ex rel. L.D. v. State of Hawaii Dept. of Ed.*, 727 F.3d 911, 914 (9th Cir. 2013) (two years).  This lawsuit therefore should not be dismissed for lack of subject matter jurisdiction as it also falls within the "capable of repetition yet evading review" exception to the mootness doctrine.

### D. To the extent that DHCS' letters are treated as settlement offers, Plaintiffs' refusal to accept these settlement offers means that their claims are not moot.

Inasmuch as DHCS has not discontinued the policies and practices challenged by this lawsuit, it at times appears to argue that its unilateral authorizations of additional services to Plaintiffs are the equivalent of a settlement offer or offer of judgment that somehow extinguishes Plaintiffs' claims.  This is not the law.

The Supreme Court's recent ruling in *Campbell-Ewald Co.*, 136 S. Ct. 663, made clear that settlement offers by defendants which are not accepted by plaintiffs have no force or effect. As Justice Ginsberg stated:

1    Under basic principles of contract law, Campbell's settlement bid

2    and Rule 68 offer of judgment, once rejected, had no continuing

3    efficacy…. Absent Gomez's acceptance, Campbell's settlement offer

4    remained only a proposal, binding neither Campbell nor Gomez….

5    Having rejected Campbell's settlement bid, and given Campbell's

6    continuing denial of liability, Gomez gained no entitlement to the

7    relief Campbell previously offered…. In short, with no settlement

8    offer still operative, the parties remained adverse; both retained the

9    same stake in the litigation they had at the outset.

10    *Id.* at 670-671 (citations omitted).  Thus, the Court concluded that "an unaccepted

11    settlement offer or offer of judgment does not moot a plaintiff's case, so the District

12    Court retained jurisdiction to adjudicate Gomez's complaint." *Id.,* at 672.  *See*

13    *also, Diaz v. First American Home Buyers Protection Corp.,* 732 F.3d 948, 954

14    (9th Cir. 2013) ("An unaccepted settlement offer - like any unaccepted contract

15    offer - is a legal nullity, with no operative effect.  As every first-year law student

16    learns, the recipient's rejection of an offer 'leaves the matter as if no offer had ever

17    been made.' " (citations omitted)). These cases dispose of any possible contention

18    by DHCS that that the letters could be settlement offers that moot this case.

19        If DHCS' letters are intended to moot Plaintiffs' claims, they "must give the

20    plaintiff *everything* he has asked for as an individual.  That means his 'entire

21    demand'… An offer limited to the relief the *defendant* believes is appropriate does

22    not suffice. The question is whether the defendant is willing to meet the plaintiff

23    on his terms." *Hrivnak v. NCO Portfolio Mgmt., Inc.,* 719 F.3d 564, 567, (6th Cir.

24    2013) (italics in original and citations omitted), *citing Gates,* 430 F.3d at 432); *see*

25    *also Diaz,* 732 F.3d at 954 ("a case 'will become moot' when 'an opposing party

26    has agreed to everything that the other party has demanded'" (citation omitted)).

27

22

1    DHCS is far from agreeing to everything that Plaintiffs have asked for in

2  this lawsuit.  At the outset, Plaintiffs have not received all the services they

3  requested to give them appropriate 24-hour direct care.  *See* Section II.A, *supra*.

4  DHCS has not agreed to modify its arbitrarily low cost limits in the NF/AH

5  Waiver or create a valid exception process.  *See* Second Amended Complaint,

6  ECF No. 70, pp. 37-39.  DHCS has not agreed to stop imposing eligibility

7  requirements that unlawfully screen out NF/AH Waiver participants and prevent

8  them from equally enjoying the Waiver, and receiving adequate care at home.  *Id*.

9  Finally, DHCS has not agreed to make reasonable modifications to the NF/AH

10  Waiver to enable participants to receive medically necessary services over the cost

11  limits, without which they are at risk of institutionalization.  *Id.*  Without these

12  agreements, the Defendants' offers are incomplete and the case is not moot.

13    **E.    Even assuming *arguendo* that Plaintiffs' claims for injunctive relief are moot, their claims for declaratory relief**
14       **are not moot.**

15    Contrary to all the evidence in the record, Plaintiffs will assume for

16  argument's sake that their claims for injunctive relief are somehow moot.  In the

17  words of the Ninth Circuit, "We have repeatedly held that where, like here, both

18  injunctive and declaratory relief are sought but the request for an injunction is

19  rendered moot during litigation, if a declaratory judgment would nevertheless

20  provide effective relief the action is not moot." *Forest Guardians v. Johanns*, 450

21  F.3d 455, 462 (9th Cir. 2006).  Moreover, in deciding a mootness issue, "the

22  question is not whether the precise relief sought at the time the application for an

23  injunction was filed is still available. The question is whether there can be *any*

24  effective relief." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir.

25  1988) (internal quotations omitted, emphasis in original).

26    Citing *Headwaters, Inc. v. Bureau of Land Management, Medford District*,

27  893 F.2d 1012 (9th Cir. 1989), DHCS argues that "Because the Department has

23

1   provided Plaintiffs the relief they seek, any declaratory relief would amount to an

2   improper advisory opinion."  Mot. to Dismiss 19:11-12.  The Ninth Circuit has

3   since limited *Headwaters* to its narrow facts, stating, "We specifically

4   distinguished, however, cases in which a plaintiff had 'made a broad request for

5   such other relief as the court deemed appropriate,' noting that this circuit may

6   construe such requests for relief 'broadly to avoid mootness.'" *Neighbors of

7   Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1066 (9th Cir. 2002); *see also Ctr.

8   for Food Safety v. Veneman*, 364 F. Supp. 2d 1202, 1213, (D. Haw. 2005) (claims

9   were not moot where plaintiffs sought "declaratory and injunctive relief regarding

10  specific permits, as well as declaratory relief regarding alleged program-wide

11  violations, and 'such other relief as may be just and proper.'").

12      The *Neighbors of Cuddy Mountain* holding is equally applicable to the

13  current lawsuit, in which Plaintiffs' claim for relief includes broad declaratory and

14  injunctive relief, as well as a prayer that the Court "[g]rant such other and further

15  relief as the Court deems to be just and equitable."  The cases are particularly

16  favorable to continuation of the lawsuit in in voluntary cessation cases.  When

17  "Defendants have failed to meet their heavy burden to make it 'absolutely clear

18  that the allegedly wrongful behavior' . . . 'could not reasonably be expected to

19  recur,'" claims for injunctive and declaratory relief will not be dismissed as moot.

20  *Bell,* 709 F.3d at 901. *See also NAACP v. Ameriquest Mortgage Co.*, 653 F. Supp.

21  2d 1013, 1014, (C.D. Cal. 2008) (in a voluntary cessation case, claims for

22  injunctive and declaratory relief survive).

23      DHCS relies heavily on *McQuillion v. Schwarzenegger*, 369 F.3d 1091 (9th

24  Cir. 2004), a case that has nothing in common with the lawsuit before this court.

25  There, one of the plaintiffs was a California prisoner who sued the governor and

26  other state officials claiming civil rights violations in the administration of the

27  parole system.  The limited holding in *McQuillion* was that the release from prison

24

of Mr. McQuillion mooted his (but not his co-defendants') claims for declaratory and injunctive relief and did not moot his claims for damages. *Id,* at 1096. Unlike Plaintiffs here, Mr. McQuillion had no continuing interest or stake in the operation of the parole system. The claims of his co-plaintiffs who remained in prison, however, were decided on the merits. *Id.* at 1098-1099.

Plaintiffs in this case are like the co-plaintiffs in *McQuillion.*  Plaintiffs herein are also more akin to the plaintiffs in *Olmstead*, 527 U.S. at 594, in which every court at every level from the district court to the Supreme Court rejected the defendants' mootness arguments.  At the very least, Plaintiffs' claims for declaratory relief are not moot.

## IV.    CONCLUSION

The Court should see this motion for what it is: an unartful attempt to moot the claims of these three Plaintiffs without any change in attitude or conduct. For all of the reasons stated above, Defendants' motion should be denied. Plaintiffs' claims simply are not moot.


Dated: March 24, 2016                Respectfully submitted,

                                     DISABILITY RIGHTS CALIFORNIA
                                     WESTERN CENTER ON LAW AND POVERTY


                          By:  _____/s/_____
                                     Elissa Gershon
                                     Attorneys for Plaintiffs

*Thomas, et al. v. Kent, et al.*; Case No. 14-CV-08013 FMO (AGRx): Plaintiffs' Opposition to Defendants' Motion to Dismiss