Elissa Gershon, State Bar No. 169741
Elissa.Gershon@disabilityrightsca.org
Anne Hadreas, State Bar No. 253377
Anne.hadreas@disabilityrightsca.org
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA  94612
Telephone:  (510) 267-1200
Fax:  (510) 267-1201

Robert D. Newman, State Bar No. 86534
rnewman@wclp.org
Mona Tawatao, State Bar No. 128779
mtawatao@wclp.org
Sue Himmelrich, State Bar No. 110664
shimmelrich@wclp.org
WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
Los Angeles, CA 90010-2826
Telephone: (213) 487-7211
Facsimile: (213) 487-0242

Attorneys for Plaintiffs JERRY THOMAS,
SEAN BENISON, and JUAN PALOMARES

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JERRY THOMAS, et al.<br><br>    Plaintiff(s),<br><br>vs.<br><br>JENNIFER KENT, et al.<br><br>    Defendant(s). | Case Number: 14-CV-08013-FMO(AGRx)<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES RE: PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED**<br><br>Courtroom:   22, 5th Floor<br>Judge:       Hon. Fernando M. Olguin<br>Trial Date:  November 29, 2016<br>Action Filed: October 16, 2014 |

*THOMAS V. KENT, DHCS;* 14-CV-08013 FMO (AGRx)

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ........................................................................................................ 1

    A.   DHCS Raises No Issues of Material Fact. ..................................................... 1

    B.   Plaintiffs Remain at Risk of Institutionalization. ............................................ 4

    C.   Declaratory and Injunctive Relief is Appropriate and Necessary. ................. 9

III. CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Franklin Inst.*,
    No. CV 13-5374, 2016 WL 2609781 (E.D. Pa. May 6, 2016) ............................... 6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................... 4

*Brantley v. Maxwell-Jolly*,
    656 F. Supp. 2d 1161 ......................................................................................... 5

*Cruz v. Zucker*,
    14-CV-4456, 2016 WL 3660763 (S.D.N.Y. July 5, 2016) ................................ 8, 9

*Davis v. Shah*,
    821 F.3d 231 (2d Cir. 2016) ............................................................................... 9

*Davison v. Plowman*,
    No. 1:16-CV-0180, 2016 WL 3167394 (E.D. Va. June 6, 2016) ......................... 7

*Desertrain v. City of Los Angeles*
    754 F.3d 1147 (9th Cir. 2014) ........................................................................... 10

*Doe v. Rumsfeld*,
    341 F. Supp. 2d 1 (D.D.C. 2004) ....................................................................... 10

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
    771 F.3d 1119, 1125 (9th Cir. 2014) ............................................................... 2, 4

*Garrido v. Dudek*,
    731 F.3d 1152 (11th Cir. 2013) ......................................................................... 10

*Gropper v. Fine Arts Hous., Inc.*,
    12 F. Supp. 3d 664 (S.D.N.Y. 2014) ................................................................... 8

*Guggenberger v. Minn.*,
    CV 15-3439 (DWF/BRT), 2016 WL 4098562 (D. Minn. July 28, 2016) .............. 7

*Jones v. United Parcel Serv., Inc.*,
    461 F.3d 982, 991 (8th Cir. 2006) ....................................................................... 4

*Lankford v. Sherman*,
    451 F.3d 496 (8th Cir. 2006) ............................................................................... 9

*Lujan v. Nat'l Wildlife Fed'n*,
 497 U.S. 871 (1990) ............................................................................................ 4

*M.R. v. Dreyfus*,
 663 F.3d 1100 (9th Cir. 2011) ......................................................................... 5, 6

*M.R. v. Dreyfus*,
 697 F.3d 706 (9th Cir. 2012) ............................................................................... 5

*Olmstead v. L.C. ex rel Zimring*,
 527 U.S. 581 (1999) ...................................................................................... 5, 10

*Rosa v. 600 Broadway Partners, LLC*,
 13 CIV. 6390, 2016 WL 1276448 (S.D.N.Y. Mar. 30, 2016) ............................. 9

*Rosebrock v. Mathis*,
 745 F.3d 963 (9th Cir. 2014) ............................................................................... 6

*Rosemere v. Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*,
 581 F.3d 1169 (9th Cir. 2009) ............................................................................. 7

*Wall v. Wade*,
 741 F.3d 492 (4th Cir. 2014) ............................................................................... 7

**State Statutes**

California Government Code Section 11135 .............................................................. 1

Wash. Admin. Code § 388-440-0001 ......................................................................... 6

**Federal Rules**

Fed. R. Civ. P. 15(b) ................................................................................................. 10

## I. INTRODUCTION

Defendants do not dispute any material fact set forth in Plaintiffs' Summary Judgment Motion. The Nursing Facility/Acute Hospital Waiver ("NF/AH Waiver" or "Waiver") allows individuals with disabilities like Plaintiffs to live at home and with their families instead of institutions. Defendants have, however, adopted arbitrary cost limits for the Waiver that illegally reduce and deny in-home care. As a result, Plaintiffs were, and still are, at serious risk of institutionalization, in violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and California Government Code Section 11135 ("Section 11135").

Defendants' multiple attempts to moot Plaintiffs' claims are unavailing. Despite being granted additional time to submit evidence concerning the Waiver Renewal, Defendants have produced just <u>one</u> document—a 15-page summary which acknowledges that the cost limits will remain in the renewed Waiver. 6/10/16 Waiver Renewal Proposal (ECF No. 197-116) at DHCS16786. Defendants' failure to present any new issues of substance in this third round of summary judgment briefing warrant a speedy resolution of this matter especially as Defendants' repeated delays are causing irreparable harm to Plaintiffs and other Waiver participants. *See* Court Order Aug. 4, 2016 (ECF No. 170) at 2:15-3:2; *see also* e.g., Declaration of Beverly Thomas (ECF No. 196-42) at ¶¶ 11-15. The Court should grant summary judgment in Plaintiffs' favor.

## II. ARGUMENT

### A. DHCS Raises No Issues of Material Fact.

All the following material facts are undisputed. <u>First</u>, all three Plaintiffs are Medi-Cal recipients with significant physical disabilities who require Waiver and other Medi-Cal services 24-hours per day to remain at home and who are at a "serious" or "high" risk of institutionalization if they do not receive such services. [P8, P141-143, P186, P197-198, P230, P244, P248, P251, P255, P299]. <u>Second</u>, DHCS has chosen to set individual cost limits for services provided through the Waiver which are significantly lower than comparable institutional care. [P32, P51-P53, P55-P56, P58, P60-P62, P64-

1

71; D14(a)-D16]. <u>Third</u>, although DHCS has an *ad hoc* practice of allowing some Waiver participants to receive ongoing nursing and/or attendant care services above the individual cost limits, DHCS has no policies or procedures for implementing this practice and does not inform health care providers, Waiver participants or even its own staff about the availability of Waiver services over the cost limits. [P74-P79, P87-P90, P91-93.1, P95-96, P99-100, P102-104, P108-115; D92-D93]. <u>Fourth</u>, until recently, DHCS has denied the requests of all three Plaintiffs for services above the individual cost limits. [P161-163, P167-P168, P210-P216, P272-283]. <u>Fifth</u>, while DHCS has now authorized services for Plaintiffs above the cost limits, DHCS has refused to provide any assurances that they will continue to do so. [P173; P179; P221; P229; P293; P298; P315-317, P319]; *see also* [D34, D35] and Schupp Dec. Feb. 26, 2016 (ECF No. 197-71) at 7:22-25. <u>Sixth</u>, DHCS has thus far submitted four versions of a Waiver amendment and none have been approved but, even if approved, the Waiver amendment lacks written policies, procedures and standards, makes no commitments to Plaintiffs or others and will expire at the end of 2016. [WA-P1, WA-P11—WA-P12.1, WA-P12.3, WA-P36—WA-P40, WA-P44, WA-P48—WA-P76]; [D28]. <u>Seventh</u>, the only document shared by DHCS regarding the Waiver Renewal confirms that the cost limits will remain in the renewed Waiver.  6/10/16 Waiver Renewal Proposal (ECF No. 197-116) at DHCS16786.  <u>Eighth</u>, DHCS continues to deny that the individual cost limits imposed on Waiver services violate the ADA or Section 504. [P324-327].

"A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014).  DHCS admits that 379 of Plaintiffs' 422 facts are "undisputed."  *See* Joint Statement of Uncontroverted Facts (ECF No. 195).  As to Plaintiffs' remaining 43 disputed facts, Defendants avoid admitting them by raising issues that are neither genuine nor material. DHCS, for instance, disputes three statements "to the extent that Plaintiffs seek to interpret, summarize, characterize, and/or argue cited evidence" [P43-

P45], without citing additional evidence or law to the contrary. These statements should be deemed established. *See* Court's Order (ECF No. 45) at ¶ 4; L.R. 56-3.

The support for this summary judgment motion comes primarily from Defendants, such as deposition testimony of DHCS officials and experts. DHCS nevertheless takes issue with 24 statements (P54, P57, P59, P63, P69, P81, P90.1, P93.2, P94, P97, P107, P160, P181, P214, P215, P217, P249, P260, P318, P323, WA-P17, WA-P25.1, WA-P34, WA-P46) by quarreling over slight changes in phrasing or interjecting additional non-material facts or improper argument. These are not triable issues of material fact.

Defendants also go to great lengths to dispute assertions that Plaintiffs' medical needs are not currently being met and that they have not received assurances that their needs will be met in the future. These purported "disputes" do not withstand scrutiny.

DHCS contests Plaintiffs' facts P177 and P178 regarding Plaintiff Thomas' need for 24-hour nursing care. In July 2014, Mr. Thomas' treating physician informed DHCS that this Plaintiff requires "24 hour 1:1 LVN nursing care" and signed a Plan of Treatment requesting, *inter alia*, 450 hours per month of LVN nursing and an "additional 270 hours per month to safely and effectively care for patient." [P166, P177; P178]; July 2014 POT (ECF No. 196-25) at JT-002388; 7/24/14 Kayaleh Ltr. to DHCS (ECF No. 196-25) at JT-002341—JT-002342. DHCS did not, however, authorize 24-hour nursing in its October 7, 2015 letter and Mr. Thomas' latest request in October 2015 has gone unanswered. [P173, P180, P181]; 10/7/15 DHCS Ltr. to Thomas (ECF No. 197-39); 11/12/15 POT (ECF No. 196-26) at JT-2324; Thomas Dec. (ECF No. 196-42) ¶ 15. Defendants' quibbling with statements of Mr. Thomas' doctors and their own expert, Dr. Dhamija, is meaningless. The Waiver itself acknowledges that the physician's signature on the Plan of Treatment is "evidence" that the physician has reviewed and agrees that the plan "addresses the participant's health care needs so that he/she can live safely at home in the community." Waiver (ECF No. 197-22) at DHCS 1683. Plaintiffs' facts P144, P145, P177, P178, and P187 should be deemed established.

DHCS' purported disputes regarding the amount of care authorized for the other

two Plaintiffs suffers from basic mathematical errors. Mr. Benison is authorized for 437 hours per month of LVN care and 283 hours of IHSS (236 hours of "direct care" and the remainder for "domestic and other" services). [P235.1, P235.3]; 2/26/16 Benison DHCS Ltr. (ECF No. 197-111); 9/4/15 Benison MOHS (ECF No. 197-93) at SB000478. Mr. Palomares is authorized for 437 hours of WPCS and 283 hours of IHSS (236 hours of "direct care" and the remainder for "domestic and other" services). [P218, 293, 297]; 6/14/15 Palomares MOHS (ECF No. 197-144) at JP-000352; 10/7/15 Palomares DHCS Letter (ECF No. 197-26). Although DHCS has authorized a total of 720 hours of care per month (24-hours per day in a 30-day month), each Plaintiff is authorized approximately 673 hours per month of "direct" care[1]—47 hours short of the 24-hour direct care they need and have requested. [P197-P198, P211, P233, P244, P248, P251, P255, P292]; 10/15/15 Benison POT (ECF No. 196-35); 10/26/15 Benison Supp. Physician's Order (ECF No. 196-36); 9/23/15 Palomares POT (ECF No. 196-21) at JP-001056. Plaintiffs' facts P199, P227, P228, P235.3, P296, and P297 should be deemed established.

Finally, Defendants dispute Plaintiffs' facts P320, WA-P95, WA-P100, WA-P105, and WA-P110, even though they admit their refusal to state unequivocally that Plaintiffs will no longer be subject to the Waiver's cost limits. *See* [D34, D35]; Jt. Mem. (ECF No. 194) at 38:7-8. DHCS' objections are unavailing; these facts should be deemed established. In short, there are no genuine issues of material fact.[2]

### B. Plaintiffs Remain at Risk of Institutionalization.

As the agency charged with promulgating ADA regulations, the Justice Department's interpretation of its regulations is entitled to deference. *Olmstead v. L.C.*

---

[1] The Waiver defines "direct care" as "hands on care to support the care needs of the waiver participant" provided by a nurse, IHSS worker, or WPCS worker. [P49].

[2] Defendants' facts D152-D172 are improper legal conclusions and should be disregarded. *See Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 991 (8th Cir. 2006). An additional 43 of DHCS' facts are not supported by sworn testimony or documentary evidence and/or rely on unsupported, conclusory assertions and future predictions in the declarations of Rebecca Schupp and/or attempt to raise immaterial facts. "Conclusory allegations of an affidavit" cannot defeat summary judgment, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), nor can a "scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, (1986). None of Defendants' disputed facts meet the standard for being "material" or "genuine." *Fresno Motors,* 771 F.3d at 1125.

*ex rel Zimring,* 527 U.S. 581, 597-598 (1999). Yet DHCS ignores the DOJ's Statement of Interest and continues to insist that Plaintiffs are not at risk of institutionalization because of the services DHCS has currently authorized. Jt. Mem. 35:8-38:5; *See* DOJ Stmt. of Int. (ECF No. 112) at 6-9. The DOJ cautions that "the at-risk inquiry is not focused on a plaintiff's past or immediate circumstances, in isolation, but rather on the ultimate question of the likelihood of a *future* institutionalization. DOJ SOI 6:22-23 (italics in original).[3] In this case, the question is "whether Plaintiffs are at risk of unnecessarily entering an institution by virtue of Defendants' *ad hoc* practice regarding exceptions." *Id.* at 9:3-4; *see also* DOJ Supp. SOI (ECF No. 171) at 2:11-16. The answer, based on uncontroverted evidence, is yes.

Failing to address the DOJ's admonishments about their *ad hoc* exception practice (DOJ Stmt. of Int. 6:13-17), Defendants admit that: (a) "there is no formal process to inform Waiver participants and their providers" about services over cost limits [D92]; (b) "the Department has no written policy or written criteria to approve services above the individual cost limit for beneficiaries in the currently approved NF/AH Waiver…." [D93]; and (c) DHCS does not compile and maintain data on Waiver participants' risk of institutionalization due to the cost limits. *See* Defs.' Resp. to WA-P25.1. In short, Defendants have not taken any steps to "'ensure' that individuals who require additional care to remain in the community will have the necessary alternative services identified and put in place to avoid unnecessary institutionalization." DOJ SOI. 6:15-17, citing *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161, 1174 (N.D. Cal. 2009).

DHCS' lack of a transparent, uniform approach to authorizing services over the individual cost limits is in stark contrast to the robust exception process adopted by Washington State following the decision in *M.R. v. Dreyfus*, 663 F.3d 1100 (9th Cir. 2011), *amended by* 697 F.3d 706 (9th Cir. 2012). In *M.R.*, the Ninth Circuit reversed the district court's denial of a preliminary injunction in a challenge to across-the-board

---

[3] Plaintiffs' current health status or hospitalizations as a proxy for risk of institutionalization (Jt. Mem. 35:28-36:6, 36:12-21) are not dispositive. *See* DOJ SOI (ECF No. 112) at 7:6-8:10.

cutbacks to the state's Medicaid funded home care program. *M.R.,* 663 F.3d at 1102. Even though the state's plan allowed for exceptions (*id.* at 1105), the Court held that the Plaintiffs were likely to succeed on their claim that the cutbacks placed them at serious risk of institutionalization in violation of the ADA. *Id.* at 1116-1117.

Following the Ninth Circuit decision, Washington enhanced its exception process, requiring, *inter alia,* notice to participants, multiple opportunities for review of service decisions, and guidance to state staff regarding standards for determining when someone is at serious risk of institutionalization. Wash. Admin. Code § 388-440-0001. The DOJ informed the state that, assuming ongoing monitoring to demonstrate efficacy, the "effective implementation of the modified [exception] process . . . would be consistent with the State's ADA obligations, as interpreted by the Supreme Court in *Olmstead*." Letter from DOJ AAG Perez and HHS OCR Director Rodriguez to Governor Gregoire, October 22, 2012, *Available at* https://www.ada.gov/olmstead/olmstead_cases_list2.htm. In contrast, California's existing and proposed Waivers contain none of these elements.

DHCS' opposition resurrects their abandoned mootness arguments, asserting that the proposed Waiver Amendment and Renewal will eliminate the cost limits. *See e.g.,* Jt. Mem. 34:3-35:5. Yet, at the same time, DHCS argues that they cannot make any future commitments to Plaintiffs. Jt. Mem. 38:7-8; Schupp Dec. Feb. 26, 2016 (ECF No. 197-71) at 7:22-25. Both arguments fail. "The continuing evolution of Defendant's position over the course of this litigation justifies Plaintiffs' insistence upon formal adjudication." *Anderson v. Franklin Inst.*, No. CV 13-5374, 2016 WL 2609781, at *8 (E.D. Pa. May 6, 2016). Moreover, as DOJ explained, DHCS "ignores the legal reality that federal approval of the proposed amendment will not *necessarily* bring the State into compliance with the ADA." DOJ Supp. SOI (ECF No. 171) at 2:9-10 (italics in original).

Defendants bear a heavy burden of proving mootness, where, as here, they have repeatedly attempted to moot this case by "voluntary cessation" of the challenged conduct. *Rosebrock v. Mathis,* 745 F.3d 963, 972 (9th Cir. 2014). DHCS' purported voluntary cessation is unilateral, informal, temporary and in the middle of this litigation.

"Courts considering whether voluntary cessation moots a claim often look for a change in official policy or law, or some other external constraint on the defendant's action, such as a collateral court order…In the absence of such a constraint, 'when a defendant retains the authority and capacity to repeat an alleged harm, a plaintiff's claim should not be dismissed as moot.'" *Davison v. Plowman*, No. 1:16-CV-0180, 2016 WL 3167394, at *4 (E.D. Va. June 6, 2016), quoting *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014). A Minnesota court rejected the state defendants' mootness arguments in an *Olmstead* challenge to HCBS Waiver waitlists because, *inter alia*, the state failed to establish that it had "discontinued the challenged *conduct*—the routine and ongoing mismanagement of the State's Waiver Services program"; and because the state's "evolving implementation" of policies to implement its *Olmstead* plan was an insufficient basis to moot the case. *Guggenberger v. Minn.*, CV 15-3439 (DWF/BRT), 2016 WL 4098562 at *7 (D. Minn. July 28, 2016) (italics in original), citing *Rosemere v. Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173 n. 3 (9th Cir. 2009).

Despite Defendants' representations, the Waiver Amendment and Renewal will not do away with the Waiver cost limits. "'Unsubstantiated assurances' in legal briefing and 'bald assertions of a defendant . . . that it will not resume a challenged policy fail to satisfy any burden of showing that a claim is moot.'" *Davison,* 2016 WL 3167394, at *4, quoting *Wall*, 741 F.3d at 497–98. Rather, uncontroverted evidence shows that the Waiver amendment embeds the current cost limits in a new section of the Waiver; it then proposes a discretionary, "second level review" for service requests that exceed the existing dollar amounts. [WA-P16, WA-P20, WA-P43, WA-P64]; 6/27 Waiver Amendment (ECF No. 197-113) at DHCS 18328. DHCS admits that the dollar figures used in the Waiver amendment are identical to the current Waiver cost limits (WA-P16, WA-P20), and that those figures have no relevance to medical necessity or participants' risk of institutionalization. [WA-P17, WA-P21–WA-P25.1]. Nevertheless, participants who require a second level review are subjected to a higher level of scrutiny for services that exceed these admittedly arbitrary dollar amounts.  Defs.' Resp. to WA-P81; 6/30/16

Tr. (ECF No. 197-125) at 26:6-27:10, 29:24-30:3. And, DHCS has no plans to inform its staff about these supposed changes (WA-P35–WA-P40) nor has DHCS indicated any plans, or taken any steps, to develop criteria for implementation of the second level review. [WA-P38, WA-P44, WA-P48–WA-P67].

The Waiver Renewal suffers from even more deficiencies, in that it has not even been released publicly thereby preventing its examination in relation to this case, let alone submitted to CMS or approved. [D138, D130, D139]; Jt. Mem. at 39:7-9. Moreover, the Renewal proposal states that "[t]he State is proposing to change from an individual cost limit to an individual cost limit that calculates cost neutrality in the aggregate across all Waiver participants." 6/10/16 Waiver Renewal Proposal (ECF No. 197-116) at DHCS16786. Despite DHCS' representations to the contrary (Jt. Mem. 12:6-7, 34:19-21, 39:1-6), the individual cost limits will persist in the new Waiver.

In *Cruz v. Zucker*, the court rejected the Medicaid director's mootness argument despite defendant's mid-litigation approval of certain requested Medicaid services, pursuant to a "June Guidance." 14-CV-4456 (JSR), 2016 WL 3660763, at *8 (S.D.N.Y. July 5, 2016). Noting that the defendant could revoke the June Guidance and resume its denial of coverage for the services at issue, the court concluded that "because [the regulation barring coverage of the requested services] is a duly promulgated regulation while the June Guidance is nonbinding guidance, the June Guidance need not even be revoked—defendant could simply begin to enforce his own regulation again." *Id.* Similarly, here, DHCS could reverse its mid-litigation approval of services over the cost limits to Plaintiffs and continue to subject them and other Waiver participants to the same arbitrary cost controls in the amended or renewed Waiver.

Even if Defendants' representations about the Waiver Amendment and Renewal are true, their illusory promises to Plaintiffs as to the removal of the cost limits do not defeat Plaintiffs' claims. *Gropper v. Fine Arts Hous., Inc.*, 12 F.Supp.3d 664, 670 (S.D.N.Y. 2014) (mootness argument rejected because where corrective changes "consist[] largely of promises that [defendant] will fulfill *in the future,* it cannot be

contended that [defendant] has 'completely and irrevocably eradicated the effects' of the alleged ADA violations" (italics in original)); *see also Rosa v. 600 Broadway Partners, LLC*, 13 CIV. 6390 (PGG), 2016 WL 1276448, at *6 (S.D.N.Y. Mar. 30, 2016). Neither the Waiver Amendment nor the Renewal have been approved by CMS and they both lack any commitment to removing the cost limits as applied to Plaintiffs or others. In short, they are speculative and subject to change at any time. *See Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (Court rejected State's mootness argument made in part on the basis of a pending Medicaid plan amendment).[4]

Here, where Defendants rely on bald assertions regarding an unapproved Waiver Amendment and Renewal, Plaintiffs are left in the exact situation that the *Cruz* court found unacceptable. "Medicaid recipients should not be forced to suffer through a cloud of uncertainty when requesting medically necessary procedures and hope that defendant will continue to defy his own regulation." *Cruz*, 2016 WL 3660763, at *8.

### C. Declaratory and Injunctive Relief is Appropriate and Necessary.

Declaratory and injunctive relief are proper here even though this case does not include a certified class. Defendants' occasional *ad hoc* exceptions to their arbitrary and illegal cost limits do not cure the programmatic defects that result in discrimination against Plaintiffs and others; Defendants must operate their Waiver program in a non-discriminatory manner. *See Davis v. Shah,* 821 F.3d 231, 264 (2d Cir. 2016) ("So long as New York continues to provide coverage of [services] under its Medicaid plan, it cannot deny such services only to certain disabled beneficiaries, with the effect of placing those disabled persons at substantial risk of institutionalization . . .").

This Court granted Plaintiffs leave to file their Second Amended Complaint, which, *inter alia*, clarified the systemic relief being sought in this case. *See* Mot. to Amend (ECF No. 56) at 5:7-19 and Order (ECF No. 69); SAC (ECF No. 70).

---

[4] Defendants curiously insert an *Olmstead* defense into the facts section of their brief without further argument, suggesting that this Court should not "tinker" with the Waiver because it serves over 3,000 people, and citing just one fact in support. Jt. Mem. at 12:13-25. Plaintiffs rely on and defer to the points raised by the DOJ, which plainly explains the inadequacy of Defendants' proffered evidence and their misinterpretation of applicable law. DOJ 2nd. Supp. SOI (ECF No. 198).

9

Declaratory and injunctive relief are proper because the evidence establishes that DHCS' statewide operation of the Waiver program is arbitrary and discriminatory. *See, e.g., Garrido v. Dudek*, 731 F.3d 1152 (11th Cir. 2013) (where individual Medicaid recipients challenged State's exclusion of behavioral health services for individuals with autism, declaratory and injunctive relief requiring a change in State's Medicaid plan was proper); *Doe v. Rumsfeld*, 341 F.Supp.2d 1, 17 (D.D.C. 2004) ("[g]overnment-wide injunctive relief for plaintiffs and all individuals similarly situated can be entirely appropriate" even if "it confers benefits upon individuals who were not [before the court]' . . ." (internal citation omitted)). *See also Olmstead,* 527 U.S. 581 (1999) (systemic relief obtained without a certified class).[5]

Finally, Defendants will not be prejudiced if the complaint is now amended to conform to proof pursuant to Rule 15(b) to add a due process violation claim. DHCS has already admitted that it does not have written policies or standards governing exceptions to the Waiver cost limits. [P93, P95, D92, D93]. Thus, the question of whether DHCS has violated due process in administering the Waiver program is one of law, and the law is clear: standardless administration of a public benefits program that affects a protected property right violates due process. *See* Jt. Mem. at 47:17-49:21. In similar situations, courts have permitted amendment under Rule 15(b). *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (incorporation of claim by amendment under Rule 15(b) is proper if raised in motion for summary judgment). The Court may thus order DHCS to create standards for implementation of the Waiver where its arbitrary practices violate procedural due process.

## III. CONCLUSION

The Court should grant Summary Judgment for Plaintiffs and order declaratory and injunctive relief as set forth in Plaintiffs' Proposed Order, ECF No. 193-1.

---

[5] Two Plaintiffs have unsuccessfully sought medically necessary services though administrative hearings. [P156, P161-P165, P169-P170, P185, P272-P280]. Nonetheless, DHCS tries to recast this case as a dispute over medical necessity, suggesting their claims could be brought in an administrative hearing (Jt. Mem. 26:14-17, 37:19-38:4, 38:23-25), failing to address the futility of this process without a communicated change in its legal position (see Jt. Mem. 27:26-28:21; [WA-P72—WA-P76]), even in disputes over medical necessity, which this case is not.

Dated: September 19, 2016   Respectfully submitted,

By: _____/s/_____
Elissa Gershon
Attorneys for Plaintiffs