1   Elissa Gershon, State Bar No. 169741
    elissa.gershon@disabilityrightsca.org
2   Anne Hadreas, State Bar No. 253377
    anne.hadreas@disabilityrightsca.org
3   Marilyn Holle, State Bar No. 61530
    marilyn.holle@disabilityrightsca.org
4   DISABILITY RIGHTS CALIFORNIA
    1330 Broadway, Suite 500
5   Oakland, CA  94612
    Tel.:  (510) 267-1200
6   Fax:  (510) 267-1201

7   Robert D. Newman, State Bar No. 86534
    rnewman@wclp.org
8   Mona Tawatao, State Bar No. 128779
    mtawatao@wclp.org
9   Sue Himmelrich, State Bar No. 110664
    shimmelrich@wclp.org

10
11  WESTERN CENTER ON LAW AND POVERTY
    3701 Wilshire Boulevard, Suite 208
12  Los Angeles, CA  90010-2826
    Tel.:  (213) 487-7211
13  Fax:  (213) 487-0242

    Attorneys for Plaintiffs
14  JERRY THOMAS, SEAN BENISON, and JUAN PALOMARES

15

## UNITED STATES DISTRICT COURT

16

## CENTRAL DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| JERRY THOMAS, et al., | CASE NO. 14-CV-08013-FMO (AGRx) |
| Plaintiffs, | **PLAINTIFFS JERRY THOMAS, SEAN BENISON, AND JUAN PALOMARES'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES PURSUANT TO CAL. CODE CIV. PROC § 1021.5 AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| JENNIFER KENT, et al., | |
| Defendants. | |
| | Date:          April 26, 2018 |
| | Time:          10:00 a.m. |
| | Ctrm:          6D, 6th Floor |
| | Judge:         Hon. Fernando M. Olguin |
| | Trial Date:    N/A |
| | Action Filed:  October 16, 2014 |

1    **<u>NOTICE OF MOTION AND MOTION</u>**

2    PLEASE TAKE NOTICE THAT on <u>April 26, 2018 at 10:00 a.m.</u>, or at such

3    other date and time as may be ordered by the Court, in Courtroom 6D of the United

4    States District Court for the Central District of California, located at 350 West 1st

5    Street, Los Angeles, California, Plaintiffs Jerry Thomas, Sean Benison, and Juan

6    Palomares ("Plaintiffs") will and hereby do move this Court, pursuant to Federal

7    Rules of Civil Procedure ("FRCP") 54(d), Local Rules 17-1.4 and 54-1, and

8    California Code of Civil Procedure, section 1021.5, for an order that Plaintiffs are

9    entitled to an award of their costs and of attorneys' fees.

10    This Motion is made on the ground that Plaintiffs meet the criteria for an

11    award of fees under California Code of Civil Procedure ("C.C.P.") section 1021.5

12    and are entitled to recover costs as the prevailing parties.

13    This motion is made following the conference of Counsel pursuant to Local

14    Rule 7-3 which took place in January and February, 2018, including specifically an

15    email communication on February 6, 2018, and a telephonic conference on

16    February 8, 2018.  This Motion was also discussed during a status conference with

17    the Court on February 22, 2018.  *See* ECF No. 351.

18    This Motion is based upon this Notice; the accompanying Memorandum of

19    Points and Authorities, the declaration of Elissa Gershon and the exhibits attached

20    thereto, the pleadings and records on file in this action; and any argument or

21    evidence that may be presented at the hearing in this matter, if a hearing is deemed

22    necessary.

23    Dated:  March 16, 2018          Respectfully submitted,

24                                    DISABILITY RIGHTS CALIFORNIA

25

26    By: _____*/s/  Elissa Gershon*_____
                Elissa Gershon
27                Attorneys for Plaintiffs

28    *(Signatures continue on the next page.)*

i

1  Dated:  March 16, 2018                    WESTERN CENTER ON LAW AND POVERTY

2

3                                            By:  _____
                                                            */s/  Sue Himmelrich*
                                                  Sue Himmelrich

4                                                 Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES

1
## TABLE OF CONTENTS

2  I.    INTRODUCTION ................................................................................... 1

3  II.   STATEMENT OF FACTS .................................................................... 2

4        A.    Background ...................................................................... 2

5        B.    Pre-Litigation Demand Letter and Attempts to Settle Prior to Service ........................................................................... 3

6

7        C.    Plaintiffs' Complaints and Additional Settlement Efforts ................... 3

        D.    Pretrial Motions ................................................................ 5
8
        E.    Removal of Cost Limits as a Result of this Litigation ......................... 7
9

10 III.  ARGUMENT ...................................................................................... 9

11       A.    State Law Governs Plaintiffs' Claim to Fees under a Catalyst Theory ............................................................................ 9

12       B.    Plaintiffs Are Entitled to Attorneys' Fees under C.C.P. Section 1021.5 ......................................................................... 10

13             1.   Plaintiffs Are Successful Parties under the Catalyst Doctrine ...... 10
14
                     a.   Plaintiffs' Lawsuit was a Catalyst ........................... 11
15
                           i.   The Chronology of Events Demonstrates that Plaintiffs' Litigation Was a Significant Factor
16                                Prompting Defendants to Eliminate Waiver Cost
17                                Limits, Creating a Presumption that Plaintiffs Were a Catalyst ............................................. 12

18
                           ii.  Defendants Will Not be Able to Rebut the
19                                Presumption that Plaintiffs' Litigation Was a Catalyst ....... 13

20                   b.   The Lawsuit Had Merit ..................................... 16

21                   c.   Plaintiffs Reasonably Attempted to Settle Prior to Filing Suit  18

22             2.   Denial of Catalyst Fees in this Case Would Be Inequitable .......... 19

23             3.   This Litigation Enforced Important Rights ....................... 21

24             4.   A Significant Benefit Has been Conferred on a Large Number of Persons ............................................. 22
25
               5.   The Necessity and Financial Burden of Private Enforcement
26                   Make the Award Appropriate .................................. 23

27             6.   Such Fees Will Not be Paid Out of Any Recovery ................. 24

28 IV.   CONCLUSION .................................................................................. 24

iii

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acton v. City of Columbia, Mo.,*
  436 F.3d 969 (8th Cir. 2006)...................................................................... 8

*Bassilios v. City of Torrance, CA,*
  166 F. Supp. 3d 1061 (C.D. Cal. 2015) ............................................... 16

*Beasley v. Wells Fargo Bank,*
  235 Cal.App.3d 1407 (1991) ................................................................... 21

*Brantley v. Maxwell-Jolly,*
  656 F. Supp. 2d 1161 (N.D. Cal. 2009) ............................................... 17

*Brown v. Crandall*, 198 Cal. App. 4th 1 (2011) .................................... 21

*Buckhannon Board and Care Home, Inc. v. West Virginia Dept.*
  *of Health and Human Resources,* 532 U.S. 598 (2001)................ 10, 19

*California Common Cause v. Duffy,*
  200 Cal. App. 3d 730 (1987)................................................................... 11

*Cates v. Chiang,*
  213 Cal. App. 4th 791 (2013)........................................................... 11, 12

*Charlebois v. Angels Baseball LP,*
  993 F. Supp. 2d 1109 (C.D. Cal. 2012) ........................................ 22, 24

*D.K. ex rel. G.M. v. Solano County Office of Educ.,*
  667 F.Supp.2d 1184 (E.D. Cal. 2009).................................................. 16

*Edwards v. Ford Motor Co.,*
  2016 WL 1665793 (S.D. Cal. 2016) ........................................................ 9

*Friends of the Trails v. Blasius,*
  78 Cal. App. 4th 810 (2000).................................................................... 22

*Gottlieb v. Conseco Senior Health Ins. Co.,*
  612 Fed. Appx. 468 (9th Cir. 2015) ........................................................ 9

*Graham v. DaimlerChrysler Corp.,*
  34 Cal. 4th 553 (2005)................................... 1, 10, 12, 16, 19, 20, 24

*Green v. Obledo,* 29 Cal. 3d 126 (1981) .................................................. 21

*Hector F. v. El Centro Elementary Sch. Dist.,*
  227 Cal. App. 4th 331 (Cal. App. 4th Dist. 2014) ........................... 21

*Henderson v. J.M. Smucker Co.,*
  2013 WL 3146774 (C.D. Cal. 2013)........................... 9, 10, 11, 13, 15

*Hogar v. Community Development Comm. of the City of Escondido,*
  157 Cal. App. 4th 1358 (2007)...................................... 10, 11, 12, 18

iv

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

*In re Conservatorship of Whitley,*
  50 Cal. 4th 1206 (2010) ................................................................. 1, 10, 20, 23

*In re Taco Bell Wage & Hour Actions,*
  222 F. Supp. 3d 813 (E.D. Cal. 2016) ........................................................ 9, 13

*Indio Police Command Unit Ass'n v. City of Indio,*
  230 Cal. App. 4th 521 (2014) .......................................................................... 22

*Jones v. Pasta Pelican, Inc.,*
  2010 WL 1465699 (N.D. Cal. 2010) ............................................................... 23

*M.R. v. Dreyfus,* 663 F. 3d 1100 (9th Cir. 2011) ................................................ 17

*MacDonald v. Ford Motor Co.,*
  142 F. Supp. 3d 884 (N.D. Cal. 2015) ........................................... 9, 12, 13, 15

*Mangold v. California Pub. Utils. Comm'n,*
  67 F.3d 1470 (9th Cir. 1995) ............................................................................ 9

*Martinez v. City of Maywood,*
  2009 WL 10670099 (C.D. Cal. 2009) ............................................................. 21

*Olmstead v. L.C.,* 527 U.S. 581 (1999) .............................................................. 17

*Olson v. Automobile Club of Southern California,*
  42 Cal.4th 1142 (2008) .................................................................................... 21

*Planned Parenthood v. Aakhus,*
  14 Cal. App. 4th 162 (1993) ............................................................................ 22

*Posada v. Lamb County,*
  16 F.2d 1066 (5th Cir. 1983) ........................................................................... 12

*Radaszewski ex rel. Radaszewski v. Maram,*
  383 F.3d 599 (7th Cir. 2004) ........................................................................... 17

*Radaszewski ex rel. Radaszewski v. Maram,*
  No. 01 C 995, 2008 WL 2097382 (N.D. Ill. Mar. 26, 2008) ........................... 17

*Riverwatch v. County of San Diego Dept. of Environmental Health,*
  175 Cal. App. 4th 768 (2009) .......................................................................... 22

*Sablan v. Dep't of Fin.,*
  856 F.2d 1317 (9th Cir. 1988) ......................................................................... 12

*Samantha C. v. State Dept. of Developmental Services,*
  207 Cal. App. 4th 71 (Cal. App. 2d Dist. 2012) ................................... 21, 23, 24

*Tipton-Whittingham v. City of Los Angeles,*
  34 Cal. 4th 604 (2004) ............................................................................... 11, 16

*Woodland Hills Residents Assoc., Inc. v. City Council of Los Angeles,*
  23 Cal. 3d 917 (1979) ............................................................................... 22, 23

*Y.G. v. Riverside Unified Sch. Dist.,*
  774 F.Supp.2d 1055 (C.D. Cal. 2011) ............................................................ 16

v

**Statutes**

28 U.S.C. § 1927.................................................................................................. 6

29 U.S.C. §§ 794-794a (Rehabilitation Act of 1973)................................................ 2

42 U.S.C. §§ 12101-12213
    (Americans with Disabilities Act), Section 504................................. 2, 3, 5, 16, 18

California Code of Civil Procedure, section 1021.5........................................ *passim*

California Government Code section 11135 ....................... 2, 3, 5, 10, 16, 18, 21, 22

California Government Code, section 11135(a)....................................................... 16

**Other Authorities**

A.B. 1518, 2015-2016 Leg., Reg. Sess. (Ca. 2015) ................................................ 15

**Rules**

Federal Rules of Civil Procedure, Rule 30(b)(6)...................................................... 4

Federal Rules of Civil Procedure, Rule 54(d) ........................................................... i

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

# I.    INTRODUCTION

Plaintiffs, three Medi-Cal recipients with significant physical disabilities, filed this lawsuit in 2014 seeking relief from arbitrary cost limits on the amount of aid they could receive from a Medi-Cal Waiver program to live in their own homes. Nearly three years later and in response to the ongoing prosecution of this lawsuit, Defendants Department of Health Care Services and its Director Jennifer Kent (the "Department") eliminated those cost limits, effecting the primary relief that Plaintiffs sought.

Plaintiffs are seeking to recover their fees and costs on a catalyst theory under California state law.  To prevail on a catalyst theory, Plaintiffs must only prove that the litigation was a significant cause of changes effectuated by the defendant. *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 568 (2005).  Plaintiffs easily satisfy this standard.  The chronology of events shows that this lawsuit has been the catalyst for the Department's elimination of the individual cost limit for participants in the Waiver program.  While the Department claims that this change was the result of the "stakeholder process" and not this lawsuit, the Department refused to make any changes in the costs limits despite many years of meetings with stakeholders.  It was only after the prosecution of this lawsuit, and this Court's refusal to dismiss it, that the change was implemented on what now appears to be a formal, continuing basis.

Where, as here, Plaintiffs are successful parties based on the results obtained, they are entitled to an award of attorneys' fees under California Code of Civil Procedure section 1021.5 in that (1) their action has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit has been conferred on potentially thousands of Waiver participants; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate. *See In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1214 (2010).  Plaintiffs meet these three criteria and therefore request that this Court grant them an award of

1

attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d), Local Rules  17-1.4 and 54-1, and California Code of Civil Procedure section 1021.5.

## II.    STATEMENT OF FACTS

### A.    Background

The program formerly called the Nursing Facility/Acute Hospital Waiver ("NF/AH Waiver"), now renamed the Home and Community Based Alternatives Waiver ("HCBA Waiver" or "Waiver"), allows individuals with disabilities like Plaintiffs Jerry Thomas, Sean Benison, and Juan Palomares to live at home and with their families, instead of in institutions, with services such as licensed nursing care, attendant care, and case management.  Second Amended Complaint, ECF No. 70, at ¶ 35.  Defendants, however, imposed arbitrary cost limits for the NF/AH Waiver that illegally reduced and denied medically necessary in-home care. *Id.* at ¶¶ 43-48. These cost limits were adopted more than a decade ago and did not increase even as comparable institutional costs increased annually.  Consequently, Defendants underfunded home-based care through the Waiver by over 30 percent.  *Id.* at ¶ 44. All three Plaintiffs were facing and/or had experienced cuts in their home care because of the NF/AH Waiver cost limits, despite the fact that their serious medical conditions had not improved, or, in the case of Jerry Thomas, had worsened. Declaration of Elissa Gershon ("Gershon Dec.") at ¶¶ 8, 12, 17; Exhibits C, G, K. As a result, Plaintiffs were without the care they needed to remain safe at home and were placed at serious risk of institutionalization, in violation of the Americans with Disabilities Act ("ADA") (42 U.S.C. §§ 12101-12213), Section 504 of the Rehabilitation Act of 1973 ("Section 504") (29 U.S.C. §§ 794-794a), California Government Code section 11135 (Cal. Gov't Code § 11135). *See generally* Second Amended Complaint, ECF No. 70.

2

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

**B.    Pre-Litigation Demand Letter and Attempts to Settle Prior to Service**

On September 22, 2014, Plaintiffs' counsel sent a letter to then Director of the Department, Toby Douglas, demanding relief on behalf of Plaintiff Jerry Thomas, who was at imminent risk of losing critical nursing services provided through the Waiver.  Gershon Dec. ¶ 2; Exhibit A.  This letter objected to the imposition of illegal cost limits and informed Mr. Douglas of other Waiver recipients who were also adversely impacted by the Waiver cost limits.  *Id.* The letter further stated that DRC planned to file a lawsuit and, if necessary, seek a preliminary injunction on Mr. Thomas' behalf.  *Id.*

A Complaint on behalf of Plaintiffs Jerry Thomas, Arthur Congdon[1], and Sean Benison was lodged on October 16, 2014 and filed on October 23, 2014.  (ECF Nos. 1, 4).  But Plaintiffs did not immediately serve the Complaint on the Department and they instead sent a courtesy copy to Mr. Douglas.  Gershon Dec. ¶ 3; Exhibit B.  The parties thereafter attempted to settle the claims raised in the Complaint from October through December 2014, at which time the Department abruptly ceased negotiations with no explanation.  Gershon Dec. ¶ 4.

**C.    Plaintiffs' Complaints and Additional Settlement Efforts**

On January 29, 2015, Plaintiffs filed their First Amended Complaint asserting claims under the ADA, Section 504, and California Government Code section 11135.  ECF No. 26.  Plaintiffs filed their Second Amended Complaint, the operative pleading, with the Court's permission but over Defendants' objections on July 7, 2015. ECF No. 70; Gershon Dec. ¶ 5.  The Second Amended Complaint added Plaintiff Juan Palomares.  ECF No. 70. The Second Amended Complaint also added language to improve the clarity of the injunctive and declaratory relief sought in the case, such as language clarifying that Defendants' policies and actions with

---

[1] Plaintiff Arthur Congdon withdrew from the case before the Second Amended Complaint was filed.  ECF No. 52.

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

1   regard to their administration of the NF/AH Waiver violated not only Plaintiffs'

2   rights, but those of "qualified individuals with disabilities such as Plaintiffs'" (*See,*

3   *e.g.* Second Amended Complaint ECF No. 70 at ¶ 123) and corresponding

4   amendments to the Request for Relief. *Id.* at 37-39.

5        In addition to providing Defendants with initial disclosures, Plaintiffs

6   propounded discovery beginning in May, 2015.  Between May and October 7, 2015,

7   Plaintiffs served Defendants with three Requests for Production of Documents; three

8   sets of Interrogatories; one set of Requests for Admission; and two deposition

9   notices pursuant to FRCP Rule 30(b)(6).  Gershon Dec. ¶ 6.  Plaintiffs took one

10  deposition of the designee of the Department of Finance; the first of four depositions

11  of DHCS' designee Rebecca Schupp, then-Chief of the Long-Term Care Division,

12  took place on October 9, 2015.  *Id.*

13       The parties were assigned to mediation and participated in mediation on

14  August 25, 2015.  ECF No. 94; Gershon Dec. ¶ 7.  The parties failed to settle, but

15  continued to pursue settlement involving relief for the three Plaintiffs until October,

16  2015.  Gershon Dec. ¶ 7.  On October 7, 2015, Defendants sent each Plaintiff a

17  letter, outside of the settlement context, authorizing services over the cost limits for

18  their levels of care. Gershon Dec. ¶¶ 7, 9, 13, 18; Exhibits E, H, L.  The letters

19  authorized additional services only for Plaintiff Palomares; as to Plaintiffs Benison

20  and Thomas, the letters rescinded proposed cuts due to the cost limits but did not

21  increase their authorized services. *Id.*  Defendants sent these letters only to the three

22  Plaintiffs, not to any of the other thousands of Waiver beneficiaries.  Gershon Dec.

23  ¶ 20; Exhibit N, Schupp Dep. 10/9/15 at 84:16-88:13 [N-75—N-79]. Defendants

24  never unconditionally authorized these services.  Gershon Dec. ¶ 20. The letters did

25  not set forth any period of time for which approval of Waiver services above the

26  cost limits for the three Plaintiffs were authorized nor did they state unequivocally

27  that the three Plaintiffs would no longer be subject to the individual cost limits for

28  Waiver services.  *Id.*

4

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

### D.   Pretrial Motions

In March 2016, Plaintiffs filed their first Motion for Summary Judgment, arguing that there was no dispute of material fact and that Defendants' administration of the NF/AH Waiver—specifically their imposition of individual annual Waiver cost limits that were significantly below the costs of institutional care, violated the ADA, Section 504, and California Government Code 11135.  ECF No. 101. At the same time, Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that the letters the three Plaintiffs had received authorizing Waiver services over the cost limits rendered the case moot, thereby divesting the Court of jurisdiction to hear their claims.  ECF No. 99.  Plaintiffs opposed the Motion to Dismiss on the grounds that the approval of services to Plaintiffs over the cost limits did not satisfy the legal requirements for establishing mootness.  ECF No. 109.  The parties each timely submitted supplemental briefs regarding the Summary Judgment motion and Motion to Dismiss.  ECF Nos. 116, 117, 118.

On March 30, 2016, nearly one-and-one-half years after the filing of this lawsuit, Defendants first revealed their intention to seek an amendment to the Waiver, in their reply papers in support of their Motion to Dismiss and in their supplemental memorandum in opposition to Plaintiffs' Motion for Summary Judgment.  ECF Nos. 117, 118.

On April 27, 2016, the Court denied both Defendants' Motion to Dismiss and Plaintiffs' Motion for Summary Judgment without prejudice, re-opened discovery on the Waiver Amendment and set a new cut-off for this discovery of June 3, 2016. ECF No. 139.

Plaintiffs filed their second Summary Judgment motion on July 18, 2016, as directed by the Court.  ECF No. 151.  Defendants based much of their opposition to the second Summary Judgment motion on the mootness arguments made in their original Motion to Dismiss, but also argued that the pending Waiver Amendment

5

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

defeated Plaintiffs' motion.  *See e.g.*, Jt. Brief re Motion for Summary Judgment, ECF No. 152 at 35:1-39:15.  Plaintiffs argued that that Defendants' *ad hoc* exception policy of authorizing services to Plaintiffs and some other Waiver participants does not meet their obligations to comply with anti-discrimination laws, and that the proposed Waiver Amendment contained fatal shortcomings, including that it would be of short duration even if it was ultimately approved.  *Id.* at 30:14-32:23; Gershon Dec. ¶ 24.

Over Plaintiffs' objections, Defendants added evidence regarding the proposed Waiver *Renewal* to their mootness arguments.  ECF No. 157.  Defendants also flooded Plaintiffs with documents relating to the Waiver Renewal, although they had agreed that this was not a basis for their arguments and refused to allow Plaintiffs to take discovery on the Renewal.  *See* ECF Nos. 159, 170.  Plaintiffs moved to strike Defendants' arguments relating to the Waiver Renewal.  ECF No. 159.  This resulted in another order from this Court, issued on August 4, 2016, denying the second Summary Judgment motion without prejudice, and also stating, "The court is cognizant of the additional delay and potential costs incurred by plaintiffs as a result of defendants' conduct, see 28 U.S.C. § 1927…."  ECF No. 170.

On August 5, 2016, Defendants filed a Motion to Stay, advancing the same mootness arguments previously raised unsuccessfully, asking for a stay *until* they could moot Plaintiffs' claims.  ECF No. 175.  Before the hearing date of September 8, 2016, the Court denied Defendants' motion and ordered the parties to begin pretrial preparation.  ECF Nos. 187, 188.

Plaintiffs filed their **third** Motion for Summary Judgment on September 7, 2016, heeding the Court's August 4, 2016 direction that "…the issue of the NF/AH Waiver Program renewal could be relevant to plaintiffs' [summary judgment] motion, and should be properly briefed by both parties." ECF No. 170.  The United States Department of Justice filed their third Statement of Interest-- as they had with

1    Plaintiffs' prior two Motions for Summary Judgment, on September 16, 2016.  ECF

2    Nos. 112, 171, 198.  The parties filed all required pre-trial documents between

3    October 21 and October 28, 2016 (ECF Nos. 205-291), before the Court vacated the

4    trial and pre-trial deadlines on October 31, 2016, pending resolution of Plaintiffs'

5    Summary Judgment motion. ECF No. 292. Defendants then attempted *twice* to put

6    before the court information regarding federal approval of the long-awaited Waiver

7    Amendment (ECF Nos. 298, 305), despite this Court's clear ruling that no evidence

8    produced after its August 4, 2016 Order was to be relied on by either party.  ECF

9    No. 170. Even after Plaintiffs expressed their desire to dismiss the case, Defendants

10   attempted, once more time, to seek dismissal of the case, on January 12, 2018, via *ex*

11   *parte* application.  ECF No. 343.  The Court denied Defendants' application without

12   comment on January 16, 2018.  ECF No. 345.

13        **E.    Removal of Cost Limits as a Result of this Litigation**

14        On May 16, 2017 Defendants received federal approval of the Waiver

15   Renewal, renamed the Home and Community Based Alternatives Waiver.  Gershon

16   Dec. ¶ 37; Exhibit V, HCBA Waiver.  Defendants noted that "The State [had]

17   moved away from an individual cost limit to cost in waiver aggregate

18   methodology." *Id.* at 361.  However, what precisely this meant and whether the

19   renewed Waiver would impact Plaintiffs' ability to receive necessary services was

20   not clear to Plaintiffs since the Department was proposing to shift the responsibility

21   for evaluations of Waiver participants to third-party Waiver Agencies.  *Id.* at V-

22   338—V-339.  Plaintiffs also needed to affirm that Defendants were not

23   mischaracterizing the process as they did with the Waiver Amendment when, as this

24   Court noted, "the amended Waiver program sets forth the same cost limit figures as

25   it did before the amendment took effect."  ECF No. 322 at 3:9-14.

26        On June 5, 2017, the Court denied Plaintiffs' Motion for Summary Judgment,

27   holding that unresolved issues of material fact remained that prevented a summary

28

7

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

1  judgment, but noting "serious concerns about whether the Waiver program comports

2  with the ADA's integration mandate."[2]  ECF No. 322 at 8-9.

3      As Plaintiffs were unclear how the renewed Waiver would impact their ability

4  to receive necessary services,  Plaintiffs sent Defendants an email on June 8, 2017,

5  with eight questions regarding the Waiver Renewal, to "determine how this case

6  might best proceed to a final resolution."  Gershon Dec. ¶ 40; Exhibit W at W-

7  673—W-675.  Defendants refused to respond to the questions, saying that discovery

8  was closed.  *Id.*

9      On June 22, 2017, the Court held a status conference, re-opened discovery on

10  the Waiver Renewal, and, upon Plaintiffs' request, ordered the parties to mediation.

11  ECF No. 328.  At the status conference, the Court admonished Defendants not to

12  file another Motion to Dismiss, stating that dispositive motions should be handled as

13  Motions for Summary Judgment.  Gershon Dec. ¶ 41.  The Court also queried why

14  Defendants had not answered Plaintiffs' June 8 questions, observing that as the

15  State, they should answer the questions.  *Id.*  The same day, the parties then met

16  jointly to discuss several matters including a schedule for upcoming discovery,

17  amending the complaint, and dispositive motions.  Plaintiffs offered to Defendants

18  that they could respond to the emailed questions in the context of settlement to help

19  Plaintiffs determine next steps, including possible settlement or dismissal of the

20  case.  Defendants continued to refuse, forcing Plaintiffs to seek this information

21  through formal discovery.  Gershon Dec. ¶¶ 41-42.

22      In September and October, 2017, the Department began responding to formal

23  discovery, which confirmed that individual cost limits were not utilized in any

24  manner to limit services in the Waiver Renewal.  Gershon Dec. ¶¶ 42-47; Exhibits

25

26  _____

[2] If the Court determined that the Defendants had in fact eliminated the cost limits

27  with the Waiver Amendment, it could have it could have entered summary judgment
   for Defendants despite Defendants not so moving, which it did not.  *See Acton v.*

28  *City of Columbia, Mo.*, 436 F.3d 969, 975 (8th Cir. 2006).

X-AA.  Plaintiffs decided that, if the case were not able to settle on mutually agreeable terms, then it would be appropriate to voluntarily dismiss the case since Plaintiffs had largely achieved their goals of eliminating the arbitrary and illegal cost limits in the Waiver. Gershon Dec. ¶ 49.

Despite repeated attempts to settle this lawsuit, the parties have been unable to reach agreement on settlement terms. The parties eventually stipulated to dismiss Plaintiffs' claims without prejudice, and filed a stipulation on February 7, 2018. ECF No. 346.  The Court held a status conference on February 22, 2018, and ordered the parties to revise the stipulation or submit supplemental briefing in light of the fact that Plaintiff Thomas has a *Guardian ad Litem*.  ECF No. 350.  The parties were unable to agree on a revised stipulation and accompanying documents; Plaintiffs therefore unilaterally filed a request for voluntary dismissal without prejudice on March 14, 2018.  ECF No. 352.

## III.    ARGUMENT

### A.    State Law Governs Plaintiffs' Claim to Fees under a Catalyst Theory

State law applies to the right to recover attorney's fees (as well as their calculation) in a federal court case in which state law claims arise, such as this one. *Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir. 1995).  As such, courts in this circuit regularly award catalyst fees where the underlying lawsuit asserts state law claims.  *See, e.g., Gottlieb v. Conseco Senior Health Ins. Co.,* 612 Fed. Appx. 468, 469 (9th Cir. 2015) (awarding catalyst fees under California law); *In re Taco Bell Wage & Hour Actions,* 222 F. Supp. 3d 813, 827 (E.D. Cal. 2016) (same); *MacDonald v. Ford Motor Co.,* 142 F. Supp. 3d 884, 890-95 (N.D. Cal. 2015); *Henderson v. J.M. Smucker Co.,* 2013 WL 3146774 at *13-14 (C.D. Cal. 2013); *Edwards v. Ford Motor Co.,* 2016 WL 1665793 at *1 (S.D. Cal. 2016).

1    **B.    Plaintiffs Are Entitled to Attorneys' Fees under C.C.P. Section**
2         **1021.5**

3         "Eligibility for section 1021.5 attorney fees is established when (1) Plaintiffs'
4    action has resulted in the enforcement of an important right affecting the public
5    interest, (2) a significant benefit, whether pecuniary or nonpecuniary has been
6    conferred on the general public or a large class of persons and (3) the necessity and
7    financial burden of private enforcement are such as to make the award appropriate."
8    *Whitley*, 50 Cal. 4th at 1214.  Plaintiffs meet these three criteria.

9         **1.    Plaintiffs Are Successful Parties under the Catalyst Doctrine**

10        Plaintiffs are in fact "successful parties" within the meaning of C.C.P.
11   §1021.5, even in the absence of a judgment or settlement.  Regardless of whether
12   Plaintiffs are eligible for fees for their federal claims under *Buckhannon Board and*
13   *Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S.
14   598, 604 (2001) (requiring under federal law that plaintiff achieve a victory through
15   a court order or other judicial imprimatur), they are entitled to attorneys' fees for
16   their Government Code §11135 claim under state law under the catalyst doctrine.
17   The California Supreme Court continues to recognize the catalyst theory, even after
18   *Buckhannon.  Graham,* 34 Cal. 4th at 568 (2004).

19        Under California law, the "critical fact" in determining Plaintiffs' status as a
20   successful party for the purposes of Section 1021.5 "is the impact of the action, not
21   the manner of its resolution."  *Graham*, 34 Cal. 4th at 566; *Henderson*, 2013 WL
22   3146774 at *4.  "Under this broad, pragmatic view . . . a plaintiff need not obtain a
23   judgment in its favor to be a 'successful party.'  Rather, a plaintiff is a 'successful
24   party' whenever it obtains the relief sought in its lawsuit, regardless of whether that
25   relief is obtained through a 'voluntary change' in the defendant's conduct, through a
26   settlement, or otherwise."  *Hogar v. Community Development Comm. of the City of*
27   *Escondido,* 157 Cal. App. 4th 1358, 1365 (2007) [emphasis added, internal
28   quotation marks omitted].

10

*Thomas v. Kent; No.* 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

1    The California Supreme Court requires a plaintiff seeking attorneys' fees to

2    show:

>    (1) The lawsuit was a catalyst motivating the defendants to provide

>    the primary relief sought; (2) that the lawsuit had merit and achieved

>    its catalytic effect by threat of victory, not by dint of nuisance and

>    threat of expense, . . . and (3) that the Plaintiffs reasonably attempted

>    to settle the litigation prior to filing the lawsuit.

8    *Tipton-Whittingham v. City of Los Angeles,* 34 Cal. 4th 604, 608 (2004).

9    Plaintiffs here meet all three of these criteria.

10    ### a.  Plaintiffs' Lawsuit was a Catalyst

11    "To be a catalyst, the lawsuit must have been 'a substantial causal factor'

12    contributing to Defendant's conduct, though the lawsuit need not be the only cause

13    of Defendant's conduct."  *Henderson,* 2013 WL 3146774 at *4 [citing cases]; *see*

14    *also Hogar,* 157 Cal. App. 4th at 1365 ("Importantly, the catalyst theory does not

15    require that *Hogar's* litigation be the only cause of defendant's acquiescence.")

16    [emphasis in original]; *Cates v. Chiang,* 213 Cal. App. 4th 791, 807 (2013) ("To

17    satisfy the causation prong of the catalyst theory, the plaintiff need not show the

18    'litigation [was] *the only cause* of defendant's acquiescence.  Rather, [the] litigation

19    need only be a substantial factor contributing to defendant's action.'") (emphasis in

20    original).  "A causal connection between the lawsuit and the result will be found if

21    the defendant's voluntary action was induced by the plaintiff's legal action . . . or

22    when the plaintiff's action was a material factor or contributed in a significant way

23    to the result achieved."  *California Common Cause v. Duffy,* 200 Cal. App. 3d 730,

24    743 (1987) (internal quotations and citations omitted).

25    To be considered a successful party under the catalyst theory, Plaintiffs must

26    show that they achieved some of their primary litigation goals; there is no

27    requirement that Plaintiffs achieve all their goals.  *See, e.g., Hogar,* 157 Cal. App.

28    4th at 1363 (affirming fee award where trial court found that "although [plaintiff]

11

did not achieve all of its goals, it was successful in attaining its primary goals."). In this case, as requested in the Second Amended Complaint, Defendants eliminated the illegal, arbitrary individual cost limits in the renewed Waiver program; shifted to authorizing Waiver services based on medical necessity; formalized their policies and procedures regarding these changes; and communicated the changes to staff and Waiver participants. *See*, *generally*, Second Amended Complaint, ECF No. 70 at 38-39. Because Plaintiffs achieved their goals, they plainly meet this test.

### i. The Chronology of Events Demonstrates that Plaintiffs' Litigation Was a Significant Factor Prompting Defendants to Eliminate Waiver Cost Limits, Creating a Presumption that Plaintiffs Were a Catalyst

Defendants in catalyst cases almost always claim their "voluntary" changes had absolutely nothing to do with the litigation. *See, e.g., Sablan v. Dep't of Fin.,* 856 F.2d 1317, 1326 (9th Cir. 1988) ("defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways") [*quoting Posada v. Lamb County,* 716 F.2d 1066, 1072 (5th Cir. 1983).] "[T]he defendant in such cases knows better than anyone why it made the decision," *Graham,* 34 Cal. 4th at 573, but will not admit plaintiff's role in order to avoid liability for catalyst fees. *See, e.g., Sablan,* 856 F.2d at 1326.

To overcome this problem, courts look to the timeline of events as the best objective evidence of the catalytic effect of litigation. *See, e.g., Hogar,* 157 Cal.App.4th at 1366 ("the chronology of events may raise an inference that the litigation was the catalyst for the relief"); *see also Sablan,* 856 F.2d at 1326 ("Clues to the provocative effects of the Plaintiffs' legal efforts are often best gleaned from the chronology of events" [*quoting Posada,* 716 F.2d at 1072]).

Where a plaintiff shows that a defendant's "voluntary" changes occurred in the course of litigation, courts often infer the catalytic effect. *See, e.g., Hogar,* 157 Cal. App. 4th at 1366-67; *Cates,* 213 Cal. App. 4th at 808-11; *MacDonald,* 142 F.

12

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

1  Supp. 3d at 891; *Henderson*, 2013 WL 3146774 at *4-9; *In re Taco Bell Wage &*
2  *Hour Actions,* 222 F. Supp. 3d at 825 ("[W]ithin several months of this lawsuit
3  being filed [defendant] changed its . . . policy . . . to comply with California law.
4  The timing of the change . . . is circumstantial evidence from which the Court finds
5  that this lawsuit was the reason that [defendant] changed its . . . policy.").

6      Here, the chronology of events supports a finding that this lawsuit was a
7  catalyst for the changes in the Waiver program.  Prior to the filing of this lawsuit,
8  Defendants consistently rejected any suggestion that they that eliminate individual
9  cost caps, not just for Plaintiffs but for all Waiver participants; the changes they
10  made subsequent to the filing of the case were due to Plaintiffs' litigation.

11          ## ii. Defendants Will Not be Able to Rebut the Presumption
12          ## that Plaintiffs' Litigation Was a Catalyst

13      Where, as here, the chronology shows that Defendants implemented
14  Plaintiffs' primary goals during the litigation — in this case, elimination of arbitrary
15  cost limits — the burden shifts to Defendants to rebut the inference by introducing
16  "convincing contemporaneous evidence" existing before the litigation, *MacDonald*,
17  142 F. Supp. 3d at 894.  Defendants must show that they already had a pre-existing
18  "concrete project or plan" to implement the changes in their rebuttal.  *Henderson*,
19  2013 WL 3146774 at *6.  Here, the Department had no such concrete plan.

20      Defendants have given lip service to the idea that they intended to remove the
21  Waiver cost limits separate and apart from this litigation.  *See e.g.* ECF No. 353.
22  However, Disability Rights California, as well as other individuals and
23  organizations, had advocated for years for such an outcome, without success, despite
24  two rounds of waiver renewals prior to this litigation.  Gershon Dec. ¶¶ 56-57;
25  Exhibits GG-JJ.  For at least eight (8) years prior to the filing of this case, Disability
26  Rights California and others advocated, without success, for increases to or
27  elimination of the Waiver cost limits.  In 2006, Disability Rights California (then
28  called Protection and Advocacy, Inc.) wrote to state officials twice, advocating for

13

an increase in, or elimination of, individual cost caps in anticipation of the 2007 Waiver renewal.  Gershon Dec. at ¶ 50; Exhibit HH.  In 2011, Disability Rights California made the same request, to no avail, in anticipation of the 2012 Waiver Renewal.  Gershon Dec. at ¶ 57; Exhibit II.  Waiver participants and others provided similar input during the renewal processes.  Gershon Dec. at ¶¶ 56-57; Exhibits HH and JJ.  Despite unanimous stakeholder input, DHCS did not make any changes to the Waiver cost limits in either the 2007 or the 2012 Waiver renewals.  Gershon Dec. ¶ 57; Exhibit N, Schupp Dep. 10/9/15 at 24:7-25:13 [N-73—N-74]; 91:7-92:16 [N-82—N-83] (thanking the public for their comments but not increasing or eliminating individual cost limits). Indeed, the Department admits that it did not make any changes to this Waiver renewal based on public input either.  Gershon Dec. ¶ 37; Exhibit V at V-343.

Equally lacking in merit is Defendants' assertion that in 2014 they intended to remove the cost limits and communicated this intent to Disability Rights California and others.  ECF No. 349 at 8.  Although Defendants began discussions with the federal government in 2014 regarding several possible solutions to the problem created by payment of overtime to home care workers, including shifting to an aggregate cost limit, Ms. Schupp admitted that Defendants abandoned this idea on January 20, 2015.  Gershon Dec. ¶¶ 21-22; Exhibit O, Schupp Dep. 1/20/16 at 112:21-113:15 [O-101—O-102]; 124:23-125:16 [O-113—O-114]; 128:8-129:15 [O-117—O-118]; 131:16-21 [O-120]; 132:10-133:6 [O-121—O-122].  As for the Waiver Renewal, throughout 2015 and as late as April 20, 2016, Defendants had made no decisions about eliminating the cost limits.  Gershon Dec. ¶¶ 26-33; Exhibit R, 4/20/16 Meeting Transcript at R-226 and R-232; Exhibit S, 4/20/16 Power Point, at S-286, S-292, S-300—S-302 (suggesting that comprehensive care management can ensure cost neutrality); Exhibit T, Technical Workgroup Feedback vs. Recommendations, at T-317—T-318.  Defendants' continued intentions to retain individual costs limits throughout most of this lawsuit is proven by the Department's

refusal to support proposed legislation in 2015 that would have eliminated the individual Waiver cost limits; that legislation ultimately failed in committee despite significant legislative and stakeholder support. Gershon Dec. ¶ 50; Exhibit BB. [3]

Notwithstanding Defendants' representations that they intended to remove the cost limits as early as 2014, they failed to act until this litigation was well underway and their Motion to Dismiss was denied. ECF No. 139.  Indeed, the Department's own budget estimates reveal a shift to aggregate cost neutrality beginning no sooner than the effective date of the Waiver Renewal, anticipated to be January 1, 2017. Gershon Dec. ¶¶ 51-55; Exhibits CC-FF.  As the court explained in *Henderson*, "[e]vidence of a general goal [to improve behavior] does not rebut" the inference that the litigation was a catalyst.  *Henderson,* 2013 WL 3146774 at *5.

It is simply not credible that Defendants planned prior to the litigation to change from individual cost caps to aggregate limits.  *See MacDonald,* 142 F. Supp. 3d at 892 (rejecting defendant's claim that it planned all along to make its change and only happened to implement it shortly after litigation commenced — "This is just too much of a coincidence to be coincidence.").  And as in *MacDonald,* the Department's assertions about when and why they decided to eliminate the individual cost limits are not supported by the timeline of events or the evidence. *Id.*

---

[3] In 2015, DHCS refused to support a bill in the state legislature (A.B. 1518, 2015-2016 Leg., Reg. Sess. (Ca. 2015)) that would have made several improvements to the Nursing Facility/Acute Hospital Waiver, including requiring the state to shift from an individual cost limit to an aggregate cost limit. Gershon Dec. ¶ 50; Exhibit BB, AB 1518 as introduced on March 10, 2015 at BB-805.  Disability Rights California prepared a fact sheet in support of AB 1518, explaining that the individual cost limits "pose[] an unnecessary and unwarranted barrier to community living for many individuals with higher care needs."  Gershon Dec. ¶ 50; Exhibit KK at KK-905. DHCS raised concerns about the fiscal impact of shifting to an aggregate cost limit (Gershon Dec. ¶ 50; Exhibit BB at BB-809) and ultimately, the bill did not pass.  *Id.* at BB-816.

1    Since Defendants have no credible, contemporaneous evidence of a concrete

2    plan existing prior to the litigation to implement the changes, Defendants cannot

3    rebut the inference that they made the changes because of the litigation.  This Court,

4    accordingly, should accept the obvious conclusion that Plaintiffs' litigation

5    catalyzed the changes.  In short, Plaintiffs are successful parties.

6                              **b.  The Lawsuit Had Merit**

7    To obtain catalyst fees, a plaintiff must show, among other things, "that the

8    lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of

9    nuisance and threat of expense." *Tipton-Whittingham,* 34 Cal. 4th at 608.  A suit

10   has merit where the Court determines "that the lawsuit is not frivolous,

11   unreasonable, or groundless." *Graham,* 34 Cal. 4th at 575 [citations and internal

12   quotation marks omitted.]  While the Court should review the factual record, the

13   determination is "not a final determination on the merits but a determination at a

14   minimum that the questions of fact and law are grave and difficult." *Id.* at 575-76.

15   Plaintiffs' claims arose under the ADA, Section 504, and California

16   Government Code Section 11135.  Section 11135 prohibits denying persons with a

17   disability "full and equal access to the benefits of, or be unlawfully subjected to

18   discrimination under, any program or activity that is conducted, operated, or

19   administered by the state or by any state agency, is funded directly by the state, or

20   receives any financial assistance from the state." Cal. Gov. Code § 11135(a).

21   "Section 11135 'is identical to the Rehabilitation Act except that the entity must

22   receive State financial assistance rather than Federal financial assistance.'" *Y.G. v.*

23   *Riverside Unified Sch. Dist.,* 774 F.Supp.2d 1055, 1065 (C.D. Cal. 2011); *D.K. ex*

24   *rel. G.M. v. Solano County Office of Educ.,* 667 F.Supp.2d 1184, 1191 (E.D. Cal.

25   2009).  Section 11135 "is also coextensive with the ADA because it incorporates the

26   protections and prohibitions of the ADA and its implementing regulations [citation

27   omitted]." *Bassilios v. City of Torrance, CA*, 166 F. Supp. 3d 1061, 1084 (C.D. Cal.

28   2015).

16

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

1    In its landmark decision, *Olmstead v. L.C.,* 527 U.S. 581, 597 (1999), the U.S.

2  Supreme Court held that the "integration mandate" of the ADA prohibits the

3  unjustified segregation of people with disabilities in institutions.  Numerous cases

4  following *Olmstead* have found that discriminatory state policies that place people

5  with disabilities at serious risk of unnecessary institutionalization may violate the

6  ADA.  For example, in *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599

7  (7th Cir. 2004), the plaintiff required around-the-clock nursing and medical care as a

8  result of brain cancer and a stroke.  Because of the Illinois Medicaid HCBS waiver

9  program's cost limit, Mr. Radaszewski was denied the 24-hour nursing care he

10  needed.  *Id*. at 603.  The Seventh Circuit reversed a judgment for the State of

11  Illinois, holding that "the integration mandate may well require the state to make

12  reasonable modifications to the form of existing services in order to adapt them to

13  community-integrated settings." *Id.* at 611.  On remand, the district court found in

14  Mr. Radaszewski's favor, and suggested that the state could approve services for

15  him that exceed the nursing home rate or modify the waiver to help meet the

16  community integration contemplated by *Olmstead*.  *Radaszewski ex rel.*

17  *Radaszewski v. Maram*, No. 01 C 995, 2008 WL 2097382 at *15 (N.D. Ill. Mar. 26,

18  2008).

19    Similarly, the court in *Brantley v. Maxwell-Jolly*, 656 F. Supp. 2d 1161 (N.D.

20  Cal. 2009), enjoined threatened cutbacks in Medi-Cal funded Adult Day Health

21  Care services that would have placed putative class members at risk of unnecessary

22  institutionalization.  *See also M.R. v. Dreyfus,* 663 F. 3d 1100, 1115-19 (9th Cir.

23  2011), amended, 697 F.3d 706 (9th Cir. 2012), (Ninth Circuit reversed the denial of

24  a preliminary injunction against Washington's Department of Social and Health

25  Services, holding that state Medicaid beneficiaries with severe mental and physical

26  disabilities had raised serious questions regarding whether new Medicaid

27  regulations discriminated against them in violation of the ADA); *see generally*,

28  Statement of Interest of United States Department of Justice, ECF No. 112.

---

17

Here, as in *Radaszewski* and *Brantley,* Plaintiffs unquestionably faced the loss of services that they depend on to remain safely in their homes due to Defendants' administration of the Medicaid program, specifically the use of individual Waiver cost limits.  Gershon Dec. ¶¶ 8, 12, 17.  Defendants admitted that imposition of individual cost limits resulted in "limiting access to critically needed services and risking unnecessary institutionalization on a case by case basis."  Gershon Dec. ¶ 54; Exhibit EE, May 2016 Medi-Cal Local Assistance Estimate, at EE-836. Although this Court found that the seriousness of Plaintiffs' risk of institutionalization remained a question of fact, it noted that it had "serious concerns about whether the Waiver program comports with the ADA's integration mandate." ECF No. 322 at 8-9.

For years, the Department did not do anything to increase or eliminate the cost limits, despite the fact that it apparently recognized the seriousness of the problem.  *See* Gershon Dec. ¶¶ 56-57; Exhibits GG-KK; Exhibit EE at EE-836. Throughout this litigation, Defendants made efforts to moot the case in various ways including authorizing Plaintiffs (but no one else) for services over the cost limits, amending the Waiver in its last year of operation (which was approved less than two months before the Waiver expired, and several motions to the Court.  *See supra* Section II. C and D.  But it was not until Defendants renewed the Waiver in 2017 — eliminating the individual cost limits and authorizing services based on medical necessity, and formalized their policies for its implementation, as Plaintiffs' requested in their Second Amended Complaint -- that they in fact could claim they have complied with Sections 11135, Section 504, and the ADA. Defendants cannot show that this result would have been achieved without this litigation. In other words, this suit had sufficient merit to qualify for a fee award.

### c.  Plaintiffs Reasonably Attempted to Settle Prior to Filing Suit

The final prong of the catalyst analysis requires Plaintiffs to show that they "reasonably attempted to settle the litigation prior to filing the lawsuit." *Hogar,* 157

18

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

Cal. App. 4th at 1365; *see also Graham,* 34 Cal. 4th at 577 ("[A] plaintiff must at least notify the defendant of its grievances and proposed remedies and give the defendant the opportunity to meet its demands within a reasonable time.").

This prong is easily satisfied here. As described above, Plaintiffs' counsel sought to resolve this dispute not only prior to filing this lawsuit, but it at several junctures after its filing, most recently less than four months ago. Gershon Dec. ¶¶ 2-4, 7, 41. Given the truly extraordinary efforts that Plaintiffs made to settle this dispute before incurring any litigation expenses, it is highly appropriate that Defendants should pay the fees that they forced Plaintiffs to incur.

**2. Denial of Catalyst Fees in this Case Would Be Inequitable**

The California Supreme Court upheld catalyst attorney's fees in *Graham* even after the United States Supreme Court rejected the doctrine for federal claims in *Buckhannon,* 532 U.S. 598. In so doing, the state high court held that:

> The principle upon which the theory is based – that we look to the 'impact of the action, not its manner of resolution' [citation omitted] – is fully consistent with the purpose of section 1021.5: to financially reward attorneys who successfully prosecute cases in the public interest, and thereby "'prevent worthy claimants from being silenced or stifled because of a lack of legal resources.'" [citation omitted].

*Graham*, 34 Cal. 4th at 568.

The California Supreme Court further stated that failure to grant attorneys' fees to a plaintiff in a meritorious action when the defendant "voluntarily" changes its conduct as a result of the lawsuit, would have negative consequences: "[A]ttorneys will be deterred from accepting public interest litigation if there is the prospect they will be deprived of such fees after successful litigation." *Id.* at 574 (citation omitted). As the Supreme Court further recognized, public interest attorneys already face a considerable risk that they will not be paid at all because

1  they will not prevail or they will be deemed ineligible under Section 1021.5, as

2  when the suit is adjudged not to be sufficiently in the public interest.  *Id.*

3      Failure to grant catalyst fees in appropriate cases will simply add to the

4  deterrent: "it defies common sense to think attorneys who take meritorious public

5  interest cases with the expectation that they will be compensated if they obtained

6  favorable results for their clients will not be deterred from doing so if the defendant

7  can litigate tenaciously, then avoid paying their fees by voluntarily providing relief

8  before a court order is entered."  *Id.*

9      Finally, granting catalyst fees in appropriate cases encourages the very

10  dismissal of cases as occurred here, where the defendant provided the relief sought

11  and there is no need to pursue the litigation further.  *Graham,* 34 Cal. 4th at 573

12  ("the catalyst rule 'saves judicial resources' [citation omitted] by encouraging

13  Plaintiffs to discontinue litigation after receiving through the defendant's

14  acquiescence the remedy initially sought.")

15      Plaintiffs here did the right thing by dismissing their case — the Department

16  should not be permitted to benefit by implementing the changes sought in the

17  litigation and then refusing to pay the fees.  To reward the Department by not

18  awarding fees would incentivize Plaintiffs to continue to litigate to come to a

19  judicial resolution, and incentivize Defendants to reject settlement of attorneys' fees.

20  If this became the order of the day, public interest litigation would be chilled, in

21  direct contravention of the purposes of section 1021.5.  *See Whitley*, 50 Cal. 4th

22  1206, 1220 (2010) ("…the Legislature that enacted section 1021.5 was not so much

23  concerned with what brought a litigant with a potential public interest case into an

24  attorney's office, but rather with allowing that litigation to move forward from there

25  by offering at least the prospect that the financial burden of the litigation could be

26  shifted to the opposing party if the litigant prevailed.")

27

28

20

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES

### 3.   This Litigation Enforced Important Rights

The "important right" criterion in section 1021.5 "merely calls for an examination of the subject matter of the action — *i.e.,* whether the right involved was of sufficient societal importance." *Beasley v. Wells Fargo Bank,* 235 Cal.App.3d 1407, 1417 (1991), disapproved on other grounds, *Olson v. Automobile Club of Southern California,* 42 Cal.4th 1142, 1153, n.6 (2008).  This case concerns the right to medical benefits, which is indisputably important. *Cf. Green v. Obledo,* 29 Cal. 3d 126, 145 (1981) ("There can be no question that the proper calculation of [welfare] benefits is a matter of public right . . ."); *Brown v. Crandall*, 198 Cal. App. 4th 1, 8 (2011) (allegedly indigent plaintiff had beneficial interest in issuance of a writ compelling a finding of eligibility for publicly-funded medical coverage).

Also at stake was the right to be free from disability discrimination, which meets the "important right" criterion.  *See, e.g., Martinez v. City of Maywood,* 2009 WL 10670099 *5 (C.D. Cal. 2009) ("Plaintiffs bring the present case [under section 11135] to seek enforcement of their right to equal access and protection from discrimination based on disability, which is an important right affecting the public interest from which the general public will benefit."); *see also Hector F. v. El Centro Elementary Sch. Dist.*, 227 Cal. App. 4th 331, 341 (Cal. App. 4th Dist. 2014) (there is a "manifest public interest" in enforcement of statutes such as antidiscrimination protections under section 11135); *Samantha C. v. State Dept. of Developmental Services*, 207 Cal. App. 4th 71, 80–81 (Cal. App. 2d Dist. 2012) (successful litigation correcting erroneous statutory interpretation of eligibility criteria for regional centers serving thousands of Californians with developmental disabilities "resulted in enforcement of important right affecting the public interest").

Plaintiffs have enforced important public rights.

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and Costs; Memorandum of Points and Authorities

1

### 4.    A Significant Benefit Has been Conferred on a Large

2

### Number of Persons

3     In ruling on a motion for attorneys' fees under §1021.5, "a trial court [sh]ould

4 determine the significance of the benefit, as well as the size of the class receiving

5 benefit, from a realistic assessment, in light of all the pertinent circumstances, of the

6 gains that have resulted in a particular case." *Woodland Hills Residents Assoc., Inc.*

7 *v. City Council of Los Angeles,* 23 Cal. 3d 917, 939-40 (1979).

8     The "'significant benefit' that will justify an attorney fee award need not

9 represent a 'tangible' asset or a 'concrete' gain but, in some cases, may be

10 recognized simply from the effectuation of a fundamental constitutional or statutory

11 policy." *Riverwatch v. County of San Diego Dept. of Environmental Health,* 175

12 Cal. App. 4th 768, 781 (2009) (*quoting Woodland Hills,* 23 Cal. 3d at 939).

13 Moreover, "the extent of the public benefit need not be great to justify an attorney

14 fee award." *Riverwatch,* 175 Cal. App. 4th at 781; *see also Friends of the Trails v.*

15 *Blasius,* 78 Cal. App. 4th 810, 834-35 (2000) (*affirming* Section 1021.5 award of

16 fees in case regarding public access to a road alongside a canal even though the

17 easement was only "a mere 240 feet of a rural ditch berm").

18     Indeed, "courts are not required to narrowly construe the significant benefit

19 factor." *Indio Police Command Unit Ass'n v. City of Indio,* 230 Cal. App. 4th 521,

20 543 (2014).  In fact, "evidence of the size of the population benefited by a private

21 suit is not always required.  The substantial benefit may be conceptual or doctrinal,

22 and need not be actual and concrete, so long as the public is primarily benefited."

23 *Planned Parenthood v. Aakhus,* 14 Cal. App. 4th 162, 171 (1993).

24     Cases brought under disability access statutes, including Section 11135, have

25 frequently been held to satisfy this requirement.  *See, e.g., Charlebois v. Angels*

26 *Baseball LP,* 993 F. Supp. 2d 1109, 1114 (C.D. Cal. 2012) ("there has been a

27 significant benefit to a large class of persons because this lawsuit was successful in

28 enforcing the civil rights of Plaintiff and the certified class of wheelchair users.");

22

*Thomas v. Kent;* No. 2:14-cv-08013 FMO (AGRx) PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES

1  *Jones v. Pasta Pelican, Inc.,* 2010 WL 1465699 *2-3 (N.D. Cal. 2010) (finding

2  elements met in case involving wheelchair access to restaurant); *see also Samantha*

3  *C.,* 207 Cal. App. 4th at 80-81.

4      Here, a large class of persons has received a significant benefit because of

5  Plaintiffs' litigation.  The renewed Waiver currently has capacity to serve more than

6  6000 participants; by 2021 it will serve almost 10,000. Exhibit V at V-376.

7      Plaintiffs have more than met their burden to show that the litigation has

8  conferred a significant benefit not just on the three named Plaintiffs but on

9  thousands of low income persons with serious physical disabilities.

10      **5.    The Necessity and Financial Burden of Private Enforcement**

11      **Make the Award Appropriate**

12      Section 1021.5 requires that "the necessity and financial burden of private

13  enforcement . . . are such as to make the award appropriate."  As the Supreme Court

14  has analyzed this question, "the necessity and financial burden requirement really

15  examines two issues: whether private enforcement was necessary and whether the

16  financial burden of private enforcement warrants subsidizing the successful party's

17  attorneys*." Whitley,* 50 Cal. 4th at 1214.

18      Since this case was filed against the government agency responsible for

19  implementing the Waiver program, "the necessity of private, as compared to public,

20  enforcement becomes clear." *Woodland Hills,* 23 Cal. 3d at 941. The Department

21  itself refused to change its policy of imposing individual cost limits, leaving it to

22  individuals such as Plaintiffs here to force that change.

23      As for the financial burden on Plaintiffs' attorneys, "[a]n award . . . is

24  appropriate when the cost of the claimant's legal victory transcends his personal

25  interest, that is, when the necessity for pursuing the lawsuit placed a burden on the

26  Plaintiff out of proportion to his individual stake in the matter." *Woodland Hills,* 23

27  Cal. 3d at 941.  While Plaintiffs improved access for themselves, their individual

28  stake was substantially outweighed by the thousands of hours of attorney time it

1  took to litigate this hard-fought case.  As such, an award of fees is appropriate.  *See*

2  *Charlebois,* 993 F. Supp. 2d at 1114; *Samantha C.,* 207 Cal. App. 4th at 81.

### 6.      Such Fees Will Not be Paid Out of Any Recovery

4        Section 1021.5 also requires a trial court to determine whether fees "should

5  not in the interest of justice be paid out of the recovery, if any."  *See also, e.g.,*

6  *Samantha C.,* 207 Cal. App. 4th at 81 ("[A]ttorney fees should not in the interest of

7  justice be paid out of the recovery, which was nonexistent."); *Charlebois,* 993 F.

8  Supp. 2d at 1114 ("[B]ecause this action was for injunctive relief alone, no fees can

9  be paid out of the recovery.")  Plaintiffs did not seek any kind of monetary recovery

10  whatsoever in this lawsuit.

11        In short, Plaintiffs have satisfied all the criteria for under Section 1021.5 and

12  are entitled to an award of fees.

### IV.    CONCLUSION

14        Defendants have attempted to do exactly what the California Supreme Court

15  warned against – "litigate tenaciously, then avoid paying their fees by voluntarily

16  providing relief before a court order is entered."  *Graham,* 34 Cal. 4th at 574.  This

17  Court should not endorse that conduct.  For all the reasons stated herein, this Court

18  should grant Plaintiffs' motion for attorneys' fees under C.C.P. Section 1021.5, and

19  set a supplemental briefing schedule to determine the precise amount of fees and

20  costs.

21  Dated:  March 16, 2018              Respectfully submitted,

22                                                         DISABILITY RIGHTS CALIFORNIA

23
24                                                         By:  _____*/s/  Elissa Gershon*_____
                                                                Elissa Gershon
25                                                              Attorneys for Plaintiffs

26  Dated:  March 16, 2018              WESTERN CENTER ON LAW AND POVERTY

27
28                                                         By:  _____*/s/  Sue Himmelrich*_____
                                                                Sue Himmelrich
                                                                Attorneys for Plaintiffs

<center>24</center>